# THE STATE ex rel. HENRY W. BOND v. D. D. FISHER, Judge, and SALLIE BOND.

### In Banc, July 20, 1910.

1. **MOTION IN ARREST: Effect of.** An order of court sustaining a motion in arrest, "on the ground that the judgment was not responsive to the issues," unappealed from, is, after the adjournment of the term, an end to the case. The only remedy plaintiff has thereafter is to "commence a new action," which he has a right to do under Section 4285, R. S. 1899.

2. ———: ———: **Foreign Judgment: No Service: Amendment.** Where the suit in this State was brought on a judgment rendered by a court in another State, against a citizen of this State, upon whom no legal process was served and who did not appear in said foreign court, the court in this State cannot permit an amendment to the proceedings in the foreign court, and an order sustaining a motion in arrest, after judgment rendered in this State upon said foreign judgment, "upon the ground that the judgment was not responsive to the issues," is, if unappealed from, an end to the case after the adjournment of the term at which the order was made. The order of the court sustaining the motion for the reason assigned states an error which cannot be cured by an amendment before the trial was had, within the meaning of Sec. 804, R. S. 1899, for thereunder it is only in "the proceedings in which the error was" that the court can permit an amendment after a motion in arrest has been sustained.

3. ———: ———: **Illegal Service: How Shown.** The mere fact that the record of the foreign court contains a jurisdictional recital that the defendant therein had been duly served with process, does not preclude defendant, when sued in this State on the judgment rendered by such foreign court, from showing by other parts of the record of equal dignity and importing equal verity that such recital is not true, and thereby impeaching the validity of such foreign judgment. For instance, he may show that, at the time of the institution of the suit in another State, he was a non-resident of said State, and did not enter his appearance in said cause, nor authorize anyone else to appear for him, that the only mode the foreign court could have acquired jurisdiction over him was by personal service, and that the only service shown was that certified to by "A. A. Lyle, D. S."

4. SERVICE: By Deputy Sheriff: Void Foreign Judgment. A service of process should be made in the name of the sheriff; if made in the name of the deputy sheriff it is void. For instance, a service certified by "A. A. Lyle, D. S.," and that alone, is void. And a judgment rendered by a chancery court of another state upon such process is also void; and, if plaintiff brings suit thereon in this State, defendant can set up such void service as a complete defense.

## Prohibition.

Peremptory writ granted.

*William C. Marshall* and *Thomas Bond* for relator.

(1) At common law the sustaining of a motion in arrest of judgment has the effect of putting an end to the case. On this proposition the authorities are uniform. 23 Cyc. Law and Proc., p. 825. And if it does not award a *venire facias de novo,* it operates as a discontinuance and dismisses defendant without day. 2 Ency. Pl. and Pr., p. 820; 3 Blackstone's Comm. 393, note 20; Kauffman v. Kauffman, 2 Wharton (Pa.) 147; Butcher v. Metts, 1 Miles (Pa.) 233; Raber v. Jones, 40 Ind. 441. (2) The only instances in which the sustaining of a motion in arrest in a civil case, without any further order therein at the same term, does not work a discontinuance of the action and dismiss the defendant without day, are those specified in section 804, R. S. 1899. By the plain terms of this statute the sustaining of a motion in arrest does not necessarily result in a new trial. It does so only in those cases where the motion was sustained for an error which could have been amended before the trial. Stid v. Railroad, 211 Mo. 415. (3) This construction of this statute by the Supreme Court is also the construction which the Legislature has placed upon its provisions, for the General Statutes of this State recognize the fact that the sustaining of a motion in ar-

rest puts an end to the case, and it is therefore enacted by positive statute that the plaintiff, in certain cases, where a judgment in his favor is arrested, shall have one year thereafter within which to bring a new suit. R. S. 1899, sec. 4285. (4) Where process is directed to the sheriff, the attempted execution thereof by a return signed "A. A. Lyle, D. S." is absolutely void both at common law and in Missouri, and such service does not bring the person in court who is named in the writ. 19 Ency. Pl. and Pr., 577, 581, 582, 584, 572-3; Murfree on Sheriffs, secs. 843 and 856; Harriman v. State, 1 Mo. 504; Atwood v. Reyburn, 5 Mo. 533; Breck v. Corby, 7 Mo. App. 300; Bennett v. Binyard, 34 Mo. 216; Russell v. Grant, 122 Mo. 161; Brown v. Langlois, 70 Mo. 226; State v. Huff, 161 Mo. 492; Eyerman v. Payne, 28 Mo. App. 79. (5) A complete defense to a foreign judgment is that the defendant therein never appeared to the action, and was not represented in the action, and was not summoned to appear by valid process. Napton v. Leaton, 71 Mo. 358; Bradley v. Welch, 100 Mo. 268; Cochran v. Thomas, 131 Mo. 279. (a) "Jurisdiction over a person can never be acquired, unless by a method which the law specifically provides, or by consent of the party himself. If the legal method has not been employed and the party does not consent, an assumption of jurisdiction by the court will be purely arbitrary." Huff v. Shepard, 58 Mo. 246.

*Jamison & Thomas* for respondents.

(1) The sustaining of a motion in arrest of judgment does not, under the practice in Missouri, operate as a dismissal of the case. State ex rel. v. Burns, 66 Mo. 227; State v. Koerner, 51 Mo. 174; Bowie v. Kansas City, 51 Mo. 454; Gilstrap v. Felts, 50 Mo. 428; Garesche v. Emerson, 31 Mo. 258; Erdbruegger v. Meier, 14 Mo. App. 256; 2 Ency. Pl. and Pr., pp. 821-2;

Gleason v. Chester, 1 Day (Conn.). 27. (2) The sustaining of a motion in arrest of judgment did not at common law put an end to the case. (a) The nature, principle and history of motions in arrest of judgment. 3 Blackstone, Comm., 393; Gould's Pleading, pp. 459, 461-2 and 484; Witham v. Earl of Derby, 1 Welson (K. B.) 55. (b) Where the motion was sustained because of defect in pleading, a repleader was allowed. Gould's Pleading, p. 479. (c) Where motion was sustained because of defective verdict, a *venire facias de novo* was proper. 2 Tidd's Practice, 922; Gould's Pleading, p. 489. (3) Under modern common law practice, no formal *venire facias de novo* is necessary, in order for a case to come to trial again after arrest of judgment. Small v. Glidden, 1 Ala. 52; 10 Ency. Pl. and Pr., 360; R. S. 1899, sec. 681.

WOODSON, J.—This is an original proceeding, instituted in this court, seeking to prohibit the respondent, as judge of the circuit court of the city of St. Louis, from taking and further exercising jurisdiction over the parties to and the subject-matter involved in the case of Sallie Bond against this relator, pending therein.

The petition filed in this court asking for the writ is in words and figures as follows (omitting caption and jurat):

"Now comes relator Henry W. Bond and states to the court, and gives it to understand, that on the 16th day of January, 1904, respondent Sallie Bond filed a suit against relator, upon an alleged foreign judgment purporting to have been rendered against him as one of the sureties on a guardian bond given in the State of Tennessee; that relator set up as his defenses to said suit by way of answer and cross-bill, the following:

"First. That he never appeared nor authorized

anyone to appear for him in the litigation in Tennessee, wherein the alleged judgment was rendered.

"Second. That he was never served with process in said suit in Tennessee, and never authorized anyone to appear on his behalf therein.

"Third. That the alleged Tennessee judgment was fraudulently concocted and procured, in this, that the said suit in Tennessee purported to have been brought against relator and other persons as co-sureties on the bond given by the guardian of respondent Sallie Bond, and that the other defendants in said suit, living in Tennessee, had set up defenses thereto which constituted a complete bar to any recovery.

"That respondent Sallie Bond, knowing all these defenses made by the resident sureties, after conducting the case in the Tennessee courts for over twenty years through her attorneys, finally dismissed it as to all of the solvent resident defendants and thereupon fraudulently induced the court to enter a fraudulent and unconscionable judgment against this defendant, who had never been served with process, who had never made any appearance either in person or by attorney, and who had been a non-resident of the State of Tennessee throughout the whole course of the litigation.

"Respondent states that upon these issues the suit finally came on to be tried before Judge D. G. Taylor, then presiding in Division No. 2 of the circuit court of the city of St. Louis, on the 21st day of June, 1907. That the plaintiff in said suit introduced in evidence an alleged transcript of the proceedings in the Tennessee court, which showed on its face that the alleged service of process in said Tennessee litigation was only executed and only signed in these words and figures, to-wit: 'A. A. Lyle, D. S.'

"In passing upon the three above-stated issues, the said trial court, after taking the case under advisement from the 21st day of June, 1907, to the 20th

day of January, 1908 (being the December term, 1907, of said court), rendered its decision, finding on the first of the above issues in favor of relator, defendant in said suit, as appears by the following instruction given at the time.

" 'The court finds as a fact that under the evidence adduced the defendant never appeared in the case in Tennessee and never authorized anyone to appear for him, and therefore the court finds the issues as to that branch of the case in favor of the defendant.'

"That the said trial judge made no finding whatever on the issues tendered by relator's cross-bill, but rendered verdict and judgment for the alleged face of said foreign judgment and interest.

"At the same term of said court the defendant duly filed his motions for a new trial and in arrest of judgment which two motions not being disposed of by the trial court at that time were continued over until the next term.

"At the second term after such judgment and decision, to-wit, the February term, 1908, of said court, plaintiff filed a motion for the correction of the aforesaid judgment by *nunc pro tunc* entry.

"Thereafter, to-wit, at the June term, 1908, of said court, and on the 22d day of June, the trial judge, by an order entered of record, overruled plaintiff's motion for a correction of the judgment *nunc pro tunc,* overruled defendant's motion for a new trial, and sustained defendant's motion in arrest of judgment, for the reason that the judgment was not responsive to the issues.

"Relator states that neither party to said suit took any appeal, or sued out any writ of error therein, or took any steps whatever to appeal from or review any of these orders of the trial court at the term at which they were entered, nor at any other term. Where-

fore said orders were no longer subject to review under the law and practice of this State.

"Relator states that he had no subsequent knowledge of said case until about a year thereafter, when the trial docket of Division No. 2 of the circuit court of the city of St. Louis showed the entry thereon of said cause, and that it was set for trial for the 5th day of October, 1909.

"Relator immediately filed his motion in said Division No. 2 of said circuit court for the discontinuance and striking of said cause from the docket of said court. Said petition being in words and figures as follows:" (Then follows a substantial recital of the foregoing facts.)

Said motion ended with the following language:

"Wherefore this defendant states that when said judgment was arrested and for naught held by the order of this court entered at the June term, 1908, without any new trial being granted, the effect of such order was to put an end to the case, and that the cause is no longer pending in this court and should be dismissed and stricken from the trial docket."

The petition continues:

"Relator states that at the first law day, he called the attention of the then judge of said court, the Honorable D. D. Fisher, to the foregoing petition, and to the lack of jurisdiction, as shown thereby, to proceed any further with the case docketed as aforesaid, or to make any other order than one ordering its discontinuance and striking it from the docket.

"That after full argument, the said Honorable D. D. Fisher took under advisement the matters and things arising under said petition, and finally on the 24th day of January, 1910, made an order overruling the prayer of said petition and refusing to discontinue said cause or to strike the same from the docket, and that said cause is now set for trial on the 10th day of February, 1910.

"Relator is advised that in making such order and undertaking thereafter to dispose of and order a new trial of said cause on the said 10th day of February, 1910, the Honorable D. D. Fisher, judge as aforesaid, exceeded the power and jurisdiction lodged in him by law and acted without rightful power and jurisdiction, to the irreparable damage of relator.

"Relator states that he is without any other adequate, full and unembarrassed remedy in the premises, save a prohibition from the Honorable Supreme Court of the State of Missouri.

"The premises considered, relator therefore prays that this court will issue its most gracious writ of prohibition commanding, prohibiting and restraining the said Honorable D. D. Fisher, Judge of the Circuit Court of the city of St. Louis, presiding in Division No. 2 thereof, and the said Sallie Bond from proceeding any further in the entertainment of jurisdiction in said cause, or in prosecuting the same until the final orders of this court, and that in the meantime the said setting of said cause on the said 10th day of February, 1910, be set aside, and for naught held and that the said Honorable D. D. Fisher, judge of said court as aforesaid, be restrained from taking any further cognizance of the said suit, and that any other relief to which plaintiff may be entitled may be granted to him in the premises."

After due consideration of the petition, the court issued a preliminary rule requiring respondent to show cause why a permanent writ of prohibition should not issue. Upon service of this rule, respondent made a return thereto, admitting the material allegations of the petition; and relator moved for judgment on the pleadings.

I.   There are but two legal propositions presented by this record for determination: First, what is the legal effect of an unappealed from order of the circuit court

of this State sustaining a motion in arrest of judgment; and, second, was the service mentioned in the petition filed herein sufficient to give the chancery court of Tennessee jurisdiction over the person of relator, one of the defendants in the cause pending therein?

We will dispose of these propositions in the order stated.

At common law an unconditional order sustaining a motion in arrest of judgment was a final disposition of the cause, that is, it prevented the rendition of a subsequent final judgment therein. But, if the order was made conditional upon an amendment, or such other action as would remove the cause of arrest, and the condition complied with, then a *venire facias de novo* should be awarded, in which case the order in arrest would not constitute a bar to the entry of a final judgment therein.

In Cyclopedia of Law and Procedure, vol. 23, p. 836, the doctrine is stated thus: "The granting of a motion in arrest of judgment prevents the entry of a final judgment in the cause, unless it is made conditional upon an amendment, or such other action as will remove the cause of arrest. And if it does not award a *venire facias de novo,* it operates as a discontinuance and dismisses defendant without day."

In Encyclopedia of Pleading and Practice, vol. 2, p. 820, the rule is stated in this language: "In civil cases the sustaining of a motion in arrest of judgment has the effect of putting an end to the case."

The rule is tersely and clearly stated by the Supreme Court of Pennsylvania in the case of Butcher v. Metts, 1 Miles 233, in the following language:

"An arrest of judgment is in effect nothing more than superseding a verdict for some cause apparent upon the record, which shows that the plaintiff is not entitled to the benefit of the verdict. It is often followed by a judgment for the defendant, that he go without day, but it is not of itself a judgment for the defendant.

The court may, after an arrest of judgment, award a repleader or a *venire de novo* without a repleader. Which of these courses is the proper one, depends upon the nature of the defect for which the judgment is arrested. If it appears by the record that the plaintiff has no cause of action, the court will give judgment, after the arrest of judgment on the verdict, that the plaintiff take nothing by his writ, and that the defendant go without day. If issue be joined upon an immaterial point, there being a sufficient cause of action alleged in the declaration, the proper course is to award a repleader. If the pleadings be sufficient, and the issue well joined, but the verdict is imperfectly found, it is usual to award a *venire de novo;* and this it is said may be done upon the motion of the defendant, without a motion in arrest of judgment.

"The *venire de novo* is an ancient proceeding of the common law. It was in use long before the practice of granting new trials. It follows, of course, upon the granting of a new trial; but as a distinct proceeding it is commonly adopted after a bill of exceptions or after a special verdict imperfectly found, but always for some cause apparent on the record, and if granted when it should not be, it is error, and the award of it may be reversed.

"A new trial, on the other hand, is commonly granted after a general verdict for some cause not apparent on the record, and it is not assignable for error. [Hambleton v. Veere, 2 Saund. 169 (n. 1); Goodtitle v. Jones, 7 T. R. 43, 48; Witham v. Lewis, 1 Wils. 48, 56; Com. Dig., tit. Pleader, R. 18; 1 Sellon's Practice, ch. 11, sec. 3 (C. D.); Miller v. Ralston, 1 Serg. & Rawle 309; Ebersoll v. Krug, 5 Binn. 53; Lessee of Pickering v. Rutty, 1 Serg. & Rawle 515.]

"In this case the fault was in the verdict. Of course it appears upon the record. A *venire facias de novo* is therefore proper.

"In regard to the objection that the defendant is no longer in court on this action, it should be observed that the judgment was arrested at this term, and no judgment has been entered for the defendant. He is therefore still in court and bound to take notice of the further proceedings in the cause. But if the term had been allowed to elapse after the arrest of judgment, and the cause had not been continued by a *curia adv. vult,* according to strict notions of practice, the action would have been discontinued, and the defendant without day in court. *Venire de novo* awarded."

And the Supreme Court of Indiana in the case of Raber v. Jones, 40 Ind. l. c. 441, in discussing this question used this language: "The complaint does not aver that the judgment against the corporation was recovered upon the policy. It is a clear principle of pleading, that in declaring upon a statute, the averments must be sufficient to bring the case within the statute. The complaint was, therefore, radically defective, in not stating facts sufficient to constitute a cause of action, and the court properly arrested the judgment.

"When the judgment was arrested, however, there should have been an end of the case. No judgment for the defendant should have followed. The arrest of judgment ends the case. Each party pays his own costs, and the plaintiff is at liberty to proceed *de novo* in a fresh action. 3 Bl. Com. 393, note u."

The case of Kauffman v. Kauffman, 2 Wharton (Pa.) 139, l. c. 147, announces the same doctrine.

The authorities seem to be uniform upon this proposition. The only modification that has been made of that common law rule is contained in section 804, Revised Statutes 1899. That section reads as follows: "When a judgment shall be arrested, the court shall allow the proceedings in which the error was, to be amended in all cases when the same amendment might have been made before trial, and the cause

shall again proceed according to the practice of the court.''

Under the provisions of this statute, the order of the court sustaining a motion in arrest of judgment does not necessarily result in a new trial, any more than it did at common law. Such an order has that effect only in those cases where the motion is sustained for an error which could have been cured by an amendment made before the trial occurred. This was so held by this court in the case of Stid v. Railroad, 211 Mo. l. c. 415, where LAMM, J., in speaking for the court, used this language: ''Speaking with precision, a motion in arrest is not a motion for a rehearing. If granted, it does not necessarily result in a new trial. If an amendment be allowed, the cause by statutory command proceeds 'according to the practice of the court.' [R. S. 1899, sec. 804.]''

This construction of that statute is in harmony with the spirit of our legislation upon the subject of nonsuits and arrests of judgments, as expressed in section 4285, Revised Statutes 1899, which, insofar as is material, reads as follows: ''If any action shall have been commenced within the times respectively prescribed in this chapter, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed.''

The only remaining matter to be determined in this connection is, was the motion in arrest sustained for an error which might have been cured by a timely amendment before the trial was had in the circuit court of the city of St. Louis? The order sustaining the motion in arrest specifically sets out the reason for the court's actions in that regard, namely, for the reason that the *judgment was not responsive to the*

*issues.* Clearly, this was not an error which could have been cured by an amendment before the trial was had in the circuit court of the city of St. Louis, within the meaning of said section 804, for the obvious reason that the judgment could not in. the very nature of things have been rendered until after the trial was had therein. And since the order of the court sustaining the motion in arrest was unconditional, unappealed from, and the term at which it was entered having long ago elapsed, it became absolute and final, and, therefore, constitutes a complete bar to all further proceedings in said cause.

But independent of the conclusions just stated, there is another equally valid reason appearing upon the record in the cause of Sallie Bond v. The Relator, pending in the chancery court of Tennessee, which also constitutes a complete bar to all further prosecution of the cause pending between them in the circuit court of the city of St. Louis, namely, that the Tennessee court acquired no jurisdiction over the person of the defendant, for the reason that the service disclosed by that record shows that the service had upon him was bad and insufficient to support the judgment therein rendered against him, and likewise was insufficient to support the judgment of the circuit court of the city of St. Louis.

It appears from the petition and return herein, that the relator, the defendant in said chancery court, was a non-resident of the State of Tennessee, and did not reside therein at the time of the institution of that suit, and had never done so since, and that relator did not enter his appearance in said court, or authorize anyone else to appear therein for him. The only other mode by which that court could have acquired jurisdiction over the relator was by personal service, and the only service shown that was had upon him was that

certified to by "A. A. Lyle, D. S.," mentioned in the petition filed herein. That service was clearly illegal and void, as will be shown more particularly in paragraph two of this opinion.

The mere fact that the record of the Tennessee court contained the jurisdictional recital that the defendant, the relator here, had been duly served with process, does not preclude the relator in that cause, or in any other cause predicated upon the judgment rendered therein, from showing by other parts of the record of equal dignity and importing equal verity, that such recital was untrue, and thereby impeach the validity of said foreign judgment. And this court has expressly held, in a number of cases, that the return of the sheriff is a part of the record itself, and when defective may be used to rebut the recital of service and overthrow the judgment based thereon. [Cloud v. Pierce City, 86 Mo. 357.]

According to the allegations of the petition filed herein and the admissions of the return made thereto, that error appears of record in both of said causes, the one pending in the chancery court of Tennessee, and the one pending in the circuit court of the city of St. Louis. And since that error could have been properly reached by a motion in arrest, filed in the latter court, we must presume that the circuit court of the city of St. Louis sustained the motion in arrest, for the reason that the record in both of said cases disclosed said illegal service had upon relator. That was also an error which could not have been cured by amendment before the trial was had in the circuit court of the city of St. Louis, for the very good reason that it was an error appearing primarily upon the record of the case pending against relator in the chancery court of the State of Tennessee (which embraces the judgment on which the judgment of the St. Louis court is predicated), over the records of which our courts have no jurisdiction. Section 804, Revised Statutes 1899, has reference to

amendments which may be made by the courts of this State; and since the circuit court of the city of St. Louis had no power or authority to amend the records of the Tennessee courts, we must conclude that the error for which the judgment in the case of Sallie Bond against this relator, pending in the circuit court of the city of St. Louis, was arrested, was not such an error as could have been corrected by amendment in that court before the trial was had, within the meaning of said section 804.

Upon that state of the record, the order of the circuit court of the city of St. Louis sustaining the motion in arrest was a complete bar to all further proceedings in that case regardless of the expiration of the term at which it was made, for the reason that the motion was sustained for an error appearing primarily upon the face of the record in the cause of Sallie Bond against Henry W. Bond, pending in the chancery court of Tennessee, which could never be amended, as before stated, by the circuit court of the city of St. Louis.

We, therefore, hold that the order of the circuit court of the city of St. Louis, sustaining the motion in arrest of judgment, operated as a discontinuance of the cause, and dismissed the defendant, the relator here, without day; and that the only remedy the plaintiff therein has is to ''commence a new action,'' as is provided for by section 4285, Revised Statutes 1899, before quoted.

II.  The second proposition presented has been passed upon several times by this court; and we have uniformly held that a service of a summons made by a deputy sheriff in his own name is bad, and that a judgment rendered in pursuance thereof is erroneous.

In the case of Harriman v. State, 1 Mo. 505, the summons which was served upon the defendants was returned personally served by ''Alexander Trent.

dep. sheriff.'' The court held that return bad in the following language: ''It is contended that this judgment is erroneous, inasmuch as there is no legal evidence of any service of the summons upon Green and Delaney; the return by the deputy sheriff, in his own name, being no legal evidence. Although the deputy may do any act which the principal sheriff can, yet the law is well settled that every act must be done in the name of the sheriff. This return is, therefore, bad, and affords no evidence of any regular service of the summons upon Green and Delaney. We have already decided that the return of the process constitutes a part of the record upon which the error will lie.''

The same rule was announced as to the return of process made in his own name by a deputy constable, in the case of Atwood v. Reyburn, 5 Mo. 533.

In State v. Huff, 161 Mo. l. c. 492, the court, in speaking of a subpoena in the words. ''spec. deputy,'' said: ''And you will also observe that the service is made by 'spec. deputy' in his own name, which, had the service been otherwise good, would have made it bad. [Murfree on Sheriffs, secs. 843, 856.] The invalidity of such a return has been thus held in this State.''

The rule of the common law governing this question is stated in the following language in 7 Bacon's Abridg., p. 184, par. 2: ''The high sheriff may execute the office of himself, and the under sheriff hath not, nor ought to have, any estate or interest in the office itself; neither may he do anything in his own name, but only in the name of the high sheriff, who is answerable for him.''

Murfree on Sheriffs, in section 850, says that in order to constitute a valid return to service of process by a deputy sheriff, there must be an ''official signature, as 'A. B., sheriff, by C. D., deputy sheriff;' '' and again the same writer, in section 856, says: ''It has

already been said that the officer who executes process must return it, and that when a deputy performs the duty, he must sign the return in the name of the sheriff or other principal, by him as deputy.' A return made in his own name by a deputy sheriff is void."

The service had upon relator, the defendant in the Tennessee court, was signed "A. A. Lyle, D. S." Assuming that the letters "D. S." stand for deputy sheriff, still that service must be held bad if tested by the well settled rule announced in this State and by the common law doctrine, as before stated.

We, therefore, hold, as previously stated, that the service had upon relator in the chancery court of Tennessee was bad, and that the judgment thereof, rendered against him in pursuance thereof, was erroneous, and was not sufficient to support the judgment rendered against him by the circuit court of the city of St. Louis.

III. If we correctly understand counsel for relator, they ask this court at the end of printed argument to make the writ of prohibition broad enough to forever prohibit Sallie Bond from bringing another action against relator on the judgment rendered against him by the chancery court of Tennessee, and not only to forever prohibit the circuit court of the city of St. Louis from taking further action in the cause now pending therein against relator, but also to prohibit it from assuming jurisdiction of and trying any new action which she may institute in the future against the relator on said Tennessee judgment.

This we cannot do, for two reasons: First, because the pleadings in this cause are not drawn along that line; and, second, by so doing we would erroneously deprive plaintiff of her right to bring a new action against the relator, as she is expressly authorized to do by section 4285, Revised Statutes 1899.

We are of the opinion that the preliminary rule heretofore issued should be made permanent.

It is so ordered. All concur.