In re Application of SCOTT AIKEN for a Public Road; JOHN T. HOWELL, Exceptor, v. JACKSON COUNTY, Appellant.

Division One, December 2, 1914.

1. PUBLIC ROAD: Appeal from Award of Damages to One Land Owner: Rights of Another. It is only errors that affect appellant or plaintiff in error that are reversible. On an appeal by the county in a proceeding to establish a public road, from a judgment on the issue raised by one landowner by his exceptions to the *quantum* of damages awarded him, the county cannot be heard to interpose the right of another landowner whose land was taken and abided the report of the commissioners awarding him no damages. Such other landowner does not complain, and the county cannot complain for him.

2. ————: Failure to File Exceptions to Commissioners' Report. A landowner whose land is taken for a public road who fails to file exceptions to the commissioners' report awarding him no damages, cannot thereafter, if the county court had juris-

diction of all the landowners and the subject-matter, claim damages.

3. ———: ———: **Raised by County.** On an appeal by the county from the judgment of the circuit court awarding damages to one landowner who excepted to the award made by the commissioners and appealed from the verdict of a jury in the county court, such landowner cannot be punished because another who did not except to the report of the commissioners was awarded no damages for his land taken. The county after trial in the circuit court cannot except for the non-excepting landowner, nor compel him to come into court, and the landowner who did except is in no wise responsible for his failure to except.

4. ———: ———: **Not Raised Below.** Unless the point was made in the circuit court that no damages were awarded by the commissioners to a non-excepting landowner whose land was taken for the public road, it cannot be considered on appeal.

5. **MOTION IN ARREST: Erroneous Judgment.** In order to raise the point on appeal that the judgment is erroneous in that it is not responsive to the issues, there must be a motion in arrest.

6. **PUBLIC ROAD: Appeal to Circuit Court: Matters for Consideration: Judgment.** Where the county court found the road to be necessary and entered judgment establishing it, and a landowner appeals to the circuit court solely from the award of damages to him, the judgment of the county court establishing the road is not drawn in question or put in jeopardy by the appeal, and to that extent the judgment remains . final, operative and self-enforcing, and it is not necessary for the judgment of the circuit court to find the jurisdictional facts upon which the location and establishment of the public road depends.

7. ———: ———: ———: **Affidavit for Appeal: Merits.** An affidavit for appeal by a landowner from the award of damages by the jury in the county court to him for land taken in which it is stated that he "is injured by the verdict of the jury and the judgment of the court, and this appeal is from the merits and an order and judgment taxing costs," when fairly read, means that the appeal was taken only from the verdict and judgment for damages and costs, the word "merits" being due to the statutory relation between appeals from justices' courts and from county courts.

8. ———: ———: **Liability of County for Damages.** When the county court has found the proposed road to be of sufficient public utility to warrant its establishment at the expense of the county, has caused it to be opened and has taken pos-

session, the county thereby becomes irrevocably bound, by its own election, to pay the damages assessed in the circuit court in favor of a landowner whose property was taken for the road and who excepted to the commissioners' award and to the verdict of the jury in the county court, and appealed to the circuit court on the issue of the amount of damages alone.

9. ————: **Measure of Damages: Fences: Twice Added.** In estimating the damages to a landowner caused by constructing a public road through his land, the jury may be instructed that, in estimating his damages, they may take into consideration the cost of building a new fence, when such fence is necessary; but they should not be told to "consider the quantity and value of the land taken for the road, and also the cost of building the necessary fences along said road, and damage to the whole tract of land of which that taken forms a part, and from the sum of these deduct the benefits peculiar to such tract;" for that is, in effect, by loose language, to tell them to add the cost of the fence to the sum of the value of the land taken and damage to that not taken, when, in fact, the cost of fencing is but one of the elements that go to swell the owner's damage.

10. ————: ————: ————: ————: **Error Corrected on Appeal.** Where the verdict is swollen by a definitely ascertained and segregated erroneous amount, the false item may be eliminated by excision, by requiring a *remittitur*. Where the instruction authorized the jury to return a verdict for the value of constructing a fence made necessary by the establishment of a public road, in addition to the value of the land taken and damage to that not taken, and all the witnesses agree on the cost of such a fence, that cost will be deducted from the gross amount of the verdict for damages, as a condition of affirmance.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

AFFIRMED (*conditionally*).

*Rozelle, Vineyard & Thacher* and *Frank A. Boys* for appellant.

(1) The court erred in giving at request of respondent, over the objection of appellant, instruction A, because it required the jury to assess the cost of fences as a distinct item of damage and it also contains

overlapping provisions. Railroad v. Murphine, 4 Wash. 448; Glendenning v. Stahley, 173 Ind. 681; Farmers Co. v. Cooper, 54 Colo. 409; Newgass v. Railroad, 54 Ark. 145; Pittsburg v. McCloskey, 110 Pa. St. 436; Curtain v. Railroad, 135 Pa. 20; Hanrahan v. Fox, 47 Iowa, 102; Henry v. Railroad, 2 Iowa, 288; Commissioners' Court v. Street, 116 Ala. 36; Lewis on Eminent Domain, sec. 498; Jackson County v. Waldo, 85 Mo. 637; Railroad v. Knapp, Stout & Co., 160 Mo. 396; Railroad v. Baker, 102 Mo. 553; Newby v. Platte County, 25 Mo. 258; Lingo v. Burford, 112 Mo. 157; Daugherty v. Brown, 91 Mo. 32; Bennett v. Hall, 184 Mo. 421; Railroad v. Fowler, 142 Mo. 679; Railroad v. Ridge, 57 Mo. 601; Railroad v. Waldo, 70 Mo. 631; McElroy v. Air Line, 172 Mo. 555; Hickman v. Kansas City, 120 Mo. 122; Bridge Co. v. Stone, 194 Mo. 188; Combs v. Smith, 78 Mo. 32. (2) The judgment of the circuit court is invalid because the court made no finding of the jurisdictional facts which would authorize the road to be established and the judgment incorporates no order establishing the road. R. S. 1909, sec. 10440; Bennett v. Hall, 184 Mo. 407; Allen v. Welch, 125 Mo. App. 287; Williams v. Kirby, 169 Mo. 629. (3) The judgment is invalid because it appears from the face of the record that the damages to the land of John P. Webb affected by the proposed road were not considered or determined. R. S. 1909, secs. 10438, 10440; State ex rel. v. Gill, 84 Mo. 248; Constitution, art. 2, sec. 21; Peterson v. Smith, 6 Wash. 163; Kitsap v. Melker, 52 Wash. 59; Askam v. King County, 9 Wash. 1; Kime v. Cass County, 71 Neb. 677; Levee Comm. v. Dancy, 65 Miss. 341; State v. Fisher, 43 N. J. L. 377.

*L. T. Dryden* for respondent.

(1) Instruction A correctly stated the law. In Galbraith v. Prentice, 109 Mo. App. 498, which was an appeal from a judgment assessing damages in favor of

Prentice for the opening of a public road through his farm, a very similar instruction to this was given, and was held to correctly state the law. Appellant's counsel has cited a number of cases from other States and some Missouri cases; but the most of the Missouri cases cited are railroad cases, where the railroad was seeking to condemn land for its right of way. Under our statutes, the railroad company is bound to build and maintain fences on either side of the right of way, at its own expense. This being true, of course the property owners in such cases would not be entitled to recover any damages for building fences. See R. S. 1909, sec. 3145; Railroad v. Fowler, 142 Mo. 679. (2) The appeal was not taken from the order of the county court establishing the road, but from the verdict of the jury and the judgment of the court on the assessment of Howell's damages. The circuit court had no jurisdiction to make any finding, authorizing an establishment of the road. That question was not before the court. R. S. 1909, secs. 10440, 4091, 7570. The "merits" referred to in the affidavit referred of course to the damages which the jury had allowed him and to nothing else. The whole of appellant's argument upon this point is not based upon the facts in this case and the authorities are therefore not in point. (3) All parties tried this case in the circuit court upon the theory that the appeal was only from the verdict and judgment on the assessment of the damages allowed Howell, respondent herein. No reference is made by either party to any other question. This being true, the appellant here is bound by that theory, and cannot seek to adopt a different one in this court. Dougherty v. Gangloff, 239 Mo. 649; Jones v. Pub. Co., 240 Mo. 200; O'Hara v. Gas Light Co., 244 Mo. 395; Railroad v. Himmelberger, 247 Mo. 179; O'Hara v. Gas Light Co., 131 Mo. App. 428; Rogers v. Foundry Co., 167 Mo. App. 228.

LAMM, J.—Appeal by Jackson county from a judgment for damages in favor of a landowner.

No remonstrance having been filed in the matter of locating and opening a public road in Sni-a-bar township, Jackson county, presently proceedings were had culminating in orders in the county court finding jurisdictional facts together with the practicability of the road, that same was of such public utility as warranted the location, establishment and opening thereof at the expense of the county, etc., the petitioners depositing the probable damages, estimated at $200, in the county treasury. It was further ordered that the proper named officer view, survey and mark out the road and take relinquishments of rights of way, etc. Presently, such officer made report in due statutory form, showing, among other things, that the road ran through the land of John T. Howell, who claimed damages in the sum of $2000. On the approval of that report, three disinterested freeholders were appointed commissioners to view the premises, hear complaints and assess damages to the owners of property not relinquishing the right of way, the court further finding anew that the road was of sufficient public utility to warrant the opening and establishment thereof at the expense of the county. Presently, after qualifying, those commissioners reported assessing Howell's damages at $400.

Going back a little, there was another propertyowner who did not relinquish the right of way, to-wit, John P. Webb. As to Webb the commissioners reported "damages, none." To that assessment, Webb filed no exceptions.

(*N. B.*: No question is raised on the regularity of any of these preliminary matters or to the jurisdiction of the county court; hence details become unimportant.)

On the coming in of the commissioners' report, John T. Howell in due time filed his written exceptions

to the effect that the damages allowed by the commissioners were inadequate, and he claimed and asked for a jury to assess the same. Presently, on the coming in of these exceptions, a statutory jury of six freeholders was impaneled and, on a trial, it brought in a verdict assessing his damages at $200. Presently, upon that verdict the road forty feet in width was established as a public road by the judgment of the county court, describing it, the parties owning land through which the road ran were allowed until the following March to give possession and open the same, a warrant was ordered issued to Howell, and he, in turn, was ordered to pay all costs accruing since the date of filing his exceptions.

In due time Howell perfected his appeal to the circuit court, his agent's affidavit for appeal, among other things, stating: ". . . he believes the appellant is injured by the verdict of the jury, the judgment of the court, and that this appeal is from the merits and an order and judgment taxing costs." Thereupon a transcript of the proceedings was filed in the circuit court of Jackson county, and presently at a trial there, on the question of damages alone, a new jury awarded him $1500, and judgment followed against Jackson county for that sum. On the coming in of a motion for a new trial, the court required a *remittitur* of $200, which was made. It thereupon entered a new judgment for $1300, at the same time overruling the motion. From that judgment, Jackson county appeals.

The motion for a new trial was put on the grounds that the verdict was against the evidence, the weight of the evidence, the law and the evidence, showed passion and prejudice and was excessive. Furthermore, that the court erred in giving three instructions, A, B and C, for plaintiff; also in admitting incompetent testimony over the objection of defendant and in excluding competent testimony offered by the defendant.

At the trial in the circuit court, Webb did not appear, nor did anyone appear for and on behalf of any of the petitioners for the road. The only appearances were on behalf of Howell, exceptor, on one side, and Jackson county on the other. The following excerpt from appellant's statement sufficiently indicates the scope of the last trial:

"The trial of the case in the circuit court was also directed solely to Howell's claim for damages." (And we may add, the judgment was limited to his damages.) "No evidence was introduced concerning the damages of John P. Webb and the jury in their verdict made no reference to him at all. Neither was any evidence introduced to show the signers of the petition were qualified freeholders, or that notice had been given of their intention to present their petition to the county court, or that the road was of sufficient utility to warrant its establishment at the expense of the county."

The record shows that appellant objected to no testimony below and that no testimony offered by appellant was excluded; nor is it now contended there was any error in instructions B and C given for plaintiff; nor that the verdict, as a verdict, is against the evidence, or the weight of the evidence, or the law and the evidence; nor that the jury was actuated by passion and prejudice against defendant. So that, by elimination, appellant reduces its assignments of error materially, as will appear in due course.

Challenged instruction A reads (the italicized clause containing the alleged vice).

"The court instructs the jury that in assessing the damages to the landowner Howell you should consider the quantity and value of land taken for the road, together with improvements thereon, if any, *and also the cost of building the necessary fence along said road, if any,* and damage, if any, to the whole tract of land, of which that taken for the road forms a part, by reason of the road running through it, and from the sum

of these deduct the benefits, if any, peculiar to such tract; that is to say, benefits peculiar to the tract itself and not shared in common by it and other lands in the same neighborhood.''

The record shows the road was opened from end to end and side to side in due time under the judgment and orders of the county court, and, as we understand it, has ever since then been and is now in use as a public road.

In taking its appeal, appellant county filed no motion in arrest, but stood alone on its motion for a new trial.

So much for a statement of the case.

The questions here are three, to-wit:

(1) That respondent's instruction A was erroneous in that it contained overlapping items on elements of damage and required the jury to assess the cost of fences as a distinct item of damages.

(2) That the judgment is invalid because the circuit court made no finding of jurisdictional facts authorizing the road to be established and the judgment incorporates no order establishing the road.

(3) And is invalid because, on the face of the record, it appears that damages to the land of John P. Webb was not considered or determined.

Of these in inverse order:

I. *Of Webb's damages.*

The road statutes direct that any party in interest may file written exceptions to the report of the commissioners assessing damages. Thereupon a jury of six freeholders, qualified under the law to act, shall be summoned, which jury ''shall try the case anew on the question of damages, *in each case separately.*'' [R. S. 1909, sec. 10438.] On certain contingencies the county court is authorized to order the road established and opened and one of these contingencies is ''if the parties in interest fail to file written exceptions

thereto." [*Ibid.,* sec. 10439.]    Turning to section 10440, *Ibid.,* it contemplates an appeal by "either party" to the circuit court "from the judgment of the county court assessing damages, *or* for opening . . . any road." We shall assume for the present, for the purposes of the point in hand, that Howell's appeal to the circuit court was not from the judgment opening the road, but from the verdict on the issue raised by his written exceptions on the *quantum* of damages and from the judgment on that verdict. From this viewpoint how stands the case on the assignment of error relating to the non-assessment of damages for the appropriation of Webb's land for the road?

In our opinion the point is without substance, because:

(1)    In the first place, in so far as the point concerns Webb and his rights, he is not a party to this proceeding. Not being in court, appellant is not entitled on its appeal from the Howell judgment to interpose the rights of Webb, if any he have. It must let Webb speak for himself. An appellant is not allowed two voices on appeal, one for itself and another for some party absent and not complaining. One voice is enough. It is only errors that affect appellant or plaintiff in error that are reversible, and courts lend an attentive ear to none other. [City of St. Louis v. Lanigan, 97 Mo. l. c. 180; R. S. 1909, sec. 2082; Kansas City v. Woerishoeffer, 249 Mo. l. c. 24.]

(2)    In the next place, an analysis of the sections of the road statute cited supra put it beyond question that the county court had jurisdiction over all landowners affected by the establishment of the road. Webb was one of them. When the commissioners with notice to him (i. e., by an order entered in a proceeding to which he was a party) were appointed to assess damages, view the premises and hear complaints and, in the performance of that duty, reported he was not damaged, the statute provided him a remedy he could

take or leave, to-wit, to file exceptions and have his damages assessed anew. Webb being in that fix and standing mute, do we understand learned counsel now appearing for appellant county to take the position that Webb could neglect to file exceptions, allow the road to be located without protest, and, not only so, but open the road himself in pursuance to the court's order and turn it over to the public and thereafter claim damages? An answer to that question is not necessary to our case, but we may as well say while we are about it that we do not so understand the law. In Seafield v. Bohne, 169 Mo. l. c. 551-2, are some observations in point. In that case no exceptions were filed to the commissioners' report and after the time for filing the same had expired, the court took up the case and made the final order (p. 550), precisely as it did in this case, so far as Webb is concerned. In that condition of things, VALLIANT, J., speaking for this division of the court, said:

"But when private property rights are threatened it is the duty of the owner to avail himself of the process of law for his protection, and if he stands by and allows a court in the exercise of its rightful jurisdiction to decide questions of law or of fact contrary to the correct interpretation of the one or to the weight of the evidence as to the other, and neglects the means at hand to correct the error he cannot afterwards treat the whole proceedings of the court as a nullity."

(3) In the next place, Howell being in nowise to blame for the absence of Webb in the county court or in the circuit court, how comes it he stands to be punished for what did not concern him? Counsel appearing for the county on this appeal, and raising the point for the first time, were not its trial attorneys in the circuit or county court. Evidently those trial attorneys concluded, when the commissioners found Webb was not damaged, that the next move was up to him under the statutory plan of opening roads. They fur-

ther concluded, since he made no move, that silence showed consent and that the finding of the commissioners became conclusive on him, hence their client, the county, was in no .danger of being mulcted thereafter in damages for the appropriation of his land. There is no escape from this conclusion, because, being learned in the law, they permitted the judgment of the county court to go establishing and opening the road. Having done that, does it lie in the mouth of the county at this late day, when new hands have come to the bellows, to face about and change its view on that question on appeal to this court?

Moreover, if learned counsel now appearing for the county are right in their contention, then the county has the road without paying Webb's damages. If, peradventure, the conscience of the county be pricked in that behalf, a ready remedy is at its door. It can ease its conscience by paying them at any time without our meddling with Howell's judgment for his separate damages, inasmuch as a reversal will not pay Webb. If, as we fear is the case, it is not conscience, but supposed danger from that angle that is behind the point and puts life and mettle into its heels, then, how will that danger be lessened by reversing Howell's judgment? Will reversal here parry the menace? Can the county make Webb interpose, or does it want to make Webb come into the circuit court on Howell's appeal, *willy nilly,* and claim his own separate damages? Or, absent Webb, are his damages to be awarded him without his having a finger in the pie, a day in court? All those things, we opine, would be new wrinkles in road litigation for which there are no precedents known to us. If he was a bold man who first ate an oyster, as Swift tells, what should we say of a court that added new terrors to road litigation?

(4)    Finally, no such point was made below during the trial, or in the motion for a new trial. The circuit court ruled on no such question; *ergo* we may not.

Attend to the lawmaker's mandate in that behalf: "No exceptions shall be taken in an appeal or writ of error to any proceedings in the circuit court, except such as shall have been expressly decided by such court." [R. S. 1909, sec. 2081.]

II. *Of the failure of the circuit court to find jurisdictional facts and to incorporate an order establishing the road in the judgment.*

Although appellant has its road in full and undisputed possession, yet it suggests that it ought not to pay Howell's damages because it fears its title to the road is bad for that the judgment in the circuit court is a straight award of money damages and makes no finding of jurisdictional facts and does not in terms establish a public road. Is that assignment of error well taken? Decidedly not, because:

(1) In the first place, it cannot be contended that the circuit court has no jurisdiction at all in the premises. It must be conceded it had jurisdiction to try the issue of damages and enter judgment thereon. If, now, it also had jurisdiction on Howell's appeal, as appellant contends, to find jurisdictional facts upon which a road could be established and had jurisdiction to establish the road, its jurisdiction to do those additional things would depend on the *form* of the appeal, as pointed out in the former paragraph and as ordained in Revised Statutes 1909, section 10440, supra. That section provides for two kinds of appeals—one from the damages, the other from the order establishing the road. Let us also concede, only *pro hac vice,* that Howell's appeal brought up to the circuit court the issues of establishing and opening a road (i. e., the question of road or no road) and for the same turn let it be admitted it was error to make no finding on those issues. With such concessions, made by way of argument, the questions obtrude at once: Was there any exception taken below? Was the question raised to

be ruled *nisi?* The answer must be, no. This appellant as the record shows got all it wanted from the court below on those scores. Howell was not opposing the road, nor was he seeking to establish the road. He was asking damages for the actual appropriation of his land. That was the sole issue interesting him. In that view of it, the burden was on appellant to show these jurisdictional facts, if on any one. This burden appellant lightly cast off. Moreover, when the judgment was rendered did appellant file a motion in arrest because on the whole record the judgment was erroneous as not responsive to the issues? No. *Contra,* it rested content with the *form* of the judgment, took its exception on other questions and raises the point in hand for the first time in this court. If the question here was whether the circuit court had jurisdiction to render any judgment at all, we would have a question of different quality; but unless we are to rule that a motion in arrest no longer serves any purpose in practice whatever, we must hold one was necessary in this case. [Murphy v. Railroad, 228 Mo. l. c. 85; Stid v. Railroad, 211 Mo. 411, and cases cited; *vide,* State ex rel. v. Fisher, 230 Mo. 325, *arguendo.*] And that its absence is fatal to the point.

(2) In the next place, if it be conceded that no motion in arrest was necessary to preserve the point, yet on this record we are forbidden by the statute to reverse the judgment on the point. This is so because the circuit court did not rule on any such question, and, absent its decision, we can make none. [*Vide* the statute quoted supra, R. S. 1909, sec. 2081.]

(3) In the next place, this record shows conclusively that no appeal was taken on the issue of road or no road but only on the issue of damages. [Bennett v. Woody, 137 Mo. 377.] Therefore the judgment of the county court establishing and opening the road was in no sense drawn in question or put in jeopardy by the appeal, but was left behind a final, operative,

self-enforcing judgment, free from the vicissitudes of the event of the appeal and not a whit depending on the circuit court's finding jurisdictional facts on which the location of a public road depends. Why should the circuit court go out of its way to do over again, by a side stroke, what had already been well and finally done. in the county court? The maxim is: A court has nothing to do with what is not before it.

Moreover, not. only was such the trial theory and therefore the preclusive theory on appeal, according to the settled doctrine of this court, but the affidavit for appeal clearly shows, when fairly read, that the appeal was taken only from the verdict and judgment for damages and costs. · That the word "merits" was used in the affidavit of appeal is due to the statutory relation between appeals from justices' courts and from county court, and the context shows the merits meant were those on the issue of damages. It results that when the county court found the road was of sufficient public utility to warrant its establishment and opening at the expense of the county and (closer home) when it went on and opened it and took possession and when (still closer home) Howell's appeal did not bring up the issues of road or no road, but only that of his damages—we say, when all these things' happened, as they did, then the county by its own election became irrevocably bound to pay the damages whenever they were set at rest by being legally awarded by an adjudication on his appeal. [Forsyth v. Heege, 61 Mo. App. 277.] The point is disallowed to appellant as without substance.

III.   *Of instruction A.*

With foregoing questions at rest, we confront the main contention in the case, *viz.,* that instruction A overlapped on the elements of damage and permitted recovery for the cost of fencing as a separate and spe-

cific item. We are of opinion this assignment is well laid, because:

(1)  While a strained construction of the language of an instruction is not a sensible device for administering justice, neither is a loose or illogical construction. As put by Professor Gray: "A loose vocabulary is the fruitful mother of evils;" and, we may add that a loose construction of loose language is the nursing father of many more. Giving the language of the instruction a sensible interpretation, it is plain that the jury were told to consider the cost of building the necessary fences along the road *and* the damage to the whole tract of land of which that taken for the road forms a part, and they were told that from the "sum" of these, together with the value of the land taken, they were to deduct the benefits, if any, peculiar, etc. That meaning is a fair and legitimate one, nay, the only one shining on the very face of the instruction itself. There can be no two ways about that. If now, it be the law (as we shall presently see it is) that necessary fencing is an element, to be sure, but is only an integral element of the damages to the land, and submerges itself into such damages, then the instruction was erroneous; for the jury under instruction A would assess as damages (1) the value of the land taken and improvements, (2) next, the cost of building the necessary fence, (3) next, the damage, if any, to the whole tract by reason of the road running through it, and would add one item to the other, thereby making a "sum," and from that sum it would deduct the benefits peculiar to the tract, etc.

The general rule for assessing damages for taking lands for a public highway and railroads is not in doubt. It is (put in small compass) the value of the land taken and the damage, if any, to the tract of which it forms a part, from which must be deducted the benefits, if any, peculiar to such tract arising from establishing the road. [McReynolds v. Railroad, 110 Mo.

l. c. 487 et seq.; Bennett v. Woody, 137 Mo. l. c. 383; McElroy v. Air Line, 172 Mo. l. c. 555.]   Cases may be found where the jury have been told that in estimating those damages they may take into consideration this or that item, for example, fencing, when that is necessary to be done by the landowner, and respondent cites us to a case in the Court of Appeals, Galbraith v. Prentice, 109 Mo. App. 498, claimed to sustain the instruction, but in that case the jury were told what elements to take into consideration.   They were not told as here to add the fencing to the value of the land taken ''and'' to the damage to the land.

We are convinced that the cost of fencing when necessary is but one of the elements that go to swell the owner's damage to the land, and which latter, when added to the land actually appropriated, make the total of his damage to be diminished by peculiar benefits, if any.   There is no controlling pronouncement in any of our cases to the contrary, and the well reasoned cases elsewhere seem to so hold.

The right doctrine is announced by Lewis (2 Lewis on Eminent Domain [3 Ed.], sec. 741), thus:

''Where, by taking a part of a tract, additional fencing will be rendered necessary in order to the reasonable use and enjoyment of the remainder, as it probably will be used in the future, and the burden of constructing such additional fence is cast upon the owner of the land; then the burden of constructing and maintaining such fence in so far as it depreciates the value of the land, is a proper element to be considered in estimating the damages.   In some of the cases cited an allowance was made for the cost of fencing as a specific item, and the language of many of the decisions seems to warrant the same view.   But this is clearly not correct, unless such an allowance is required by the statute under which the proceedings are had.   It is a question of damage to the land, as land. If, in view of the probable future use of the land, ad-

ditional fencing will be necessary, of which the jury or commissioners are to judge, and the owner must construct the fence if he has it, then the land is depreciated in proportion to the expense of constructing and maintaining such fencing. Nothing can be allowed for fence, as fence. The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it. Evidence of the cost of suitable fencing is competent as affording a means of arriving at the extent of the burden. Where by statute a railroad is bound to fence its right of way, no allowance can be made to the owner for that purpose.''

The testimony was put in in a way to stress the error. Some of the witnesses testified to the damage from the depreciation in value of the farm as a farm by running the road through it and cutting off sixty acres, giving figures. Some testified to the same thing and then, as an additional item, were asked about the cost of fencing; so that when the testimony was in and the erroneous instruction was listened to by the jury, it is plain from the amount of damages they returned that it was built up precisely as the instruction directed.

(2) But the situation is such that this erroneous instruction ought not to reverse the judgment and necessarily remand for a new trial. This is so because: All the witnesses, testifying to the cost of the fence, agree on the cost, putting it at $338.66. Deducting that sum from the judgment amount, we have left $961.34, as a good round judgment for respondent and all the testimony will support.

Where the verdict is swollen by a definitely ascertained and segregated erroneous amount, as here, the false item may be pinched out, eliminated by excision, under the reasoning of our cases, by requiring a *remittitur*. The right of judicial excision of such an item was the underlying groundwork of our present doctrine

of *remittitur* which has gone, in its later developments, far beyond that.

If, therefore, respondent within ten days will enter a *remittitur* of $338.66, his judgment will be affirmed for $961.34, to bear interest from the date of its rendition. Otherwise, the judgment will be reversed and the cause remanded for a new trial. All concur.