MAUDE B. BOYCE et al., Defendants in Error, v. JOHN L. GINGRICH et al., Plaintiffs in Error.

**Kansas City Court of Appeals, January 30, 1911.**

1. **EVIDENCE: Exchange of Real Estate: Market Value.** Where the plaintiff's husband, a farmer, went to the locality in which was situated the land for which plaintiff had traded, and made it his business to find out what land was selling for in that locality, he was a competent witness as to the market value of the land traded for.

2. ———: ———: **Market Value and Trading Value.** In an action to recover damages for fraudulent representations in the exchange of real estate, the offer of defendants to prove that there is a difference between the market cash value of real estate, and its trading value, was properly rejected, because the proposed evidence could not affect the measure of damages.

3. **CONTRACTS: Exchange of Real Estate: Fraudulent Representations: Measure of Damages.** In an action to recover damages for fraudulent representations in the exchange of real estate, the measure of damages is the difference between the actual market value of the land conveyed to plaintiffs, at the time it was conveyed, and what would have been its value at the time, had it been in point of quality, condition, location and value, as represented by defendants.

4. ———: ———: ———. The measure of damages, in cases of *ex delicto* based upon fraud and deceit is not alone the difference in the actual value of the properties conveyed, but the benefits and gains of the bargain are also proper elements of damages.

Appeal from Boone Circuit Court.—*Hon. N. D. Thurmond*, Judge.

AFFIRMED.

*J. W. Tincher, J. R. Baker, F. G. Harris, Ralph T. Finley* and *N. T. Gentry* for plaintiffs in error.

*E. W. Hinton* and *Harris & Hay* for defendants in error.

BROADDUS, P. J.—This is an action to recover damages for fraudulent representations in the exchange of real estate.

The facts are: That in the month of July, 1909, plaintiff, Maude B. Boyce, was the owner of certain real property in the city of Columbia, Missouri. Her husband, acting as her agent, authorized the defendant, Daugherty, to sell or exchange it at the listed price of $7500. Daugherty was a man engaged in the real estate business, in whom the plaintiffs had full confidence. He was also the agent of his co-defendant Gingrich for the purpose of assisting him in the sale of a tract of land which he owned, consisting of 160 acres situated in Woodson county, Kansas, and which was listed at the price of $9600. Daugherty comunicated to Gingrich that he had plaintiff's property, consisting of a house and lot, for sale or exchange. Daugherty showed Gingrich plaintiff's property and gave him the price, and the latter expressed himself as willing to trade his property for that of plaintiffs. The plaintiffs who lived in the country some distance from Columbia were notified by Daugherty, that he had a prospective buyer for their property. Boyce, the husband, came to Columbia and found Gingrich and Daugherty in the latter's office. Daugherty represented to Boyce that he had an advantageous trade for him in Kansas, and referred to the 160 acre tract owned by Gingrich, which he wished to exchange for the house and lot. Boyce being unacquainted with the Kansas land, and his wife's health being such that he could not leave home to go and see the land, stated that if any trade was made he would have to rely on the word of the defendants. Both defendants assured Boyce that they would correctly describe the land to him; Daugherty saying, "I will tell you the truth about it," and Gingrich that they would "treat him like a brother."

The description and representation of Daugherty as testified to by Boyce was that: "He, Daugherty, said it was in good shape, five miles from Yates Center, good fences, good barn and good orchard. He said the house was in good condition and that the adjoining lands sold for from $60 to $70 per acre; and that this land was worth $60 an acre. Mr. Gingrich said just the same as Mr. Daugherty did; their descriptions were the same as to the improvement of the property, the value and prices that neighboring lands were selling for," and that he was induced to make an exchange of properties upon the faith of said representations of defendants.

At the time there was an encumbrance of $4600 upon the Boyce property and $3500 upon Gingrich's land. It was considered by the parties that Boyce had an equity of $2900 in the property in Columbia, and that Gingrich had an equity of $6100 in his Kansas property. For this difference between the equities, Boyce agreed to let Gingrich have all the crops then on the Kansas land at the value of $300, and that the Boyces would execute notes secured in the Kansas land for $2900; all of which was embraced in a contract written and signed by the parties.

Boyce went home taking with him a copy of the contract and blank deed; not returning as was expected, Daugherty telephoned and asked Mrs. Boyce why Boyce did not come in and close the deal. Mrs. Boyce testified that: "I answered the 'phone and told him I thought he was out of the notion; that he did not want to trade without seeing the property, and he, Daugherty, went on and told that the property was in good shape, and that he had been over it and was just from there," etc. He made representations similar to those made to Mr. Boyce. She stated that she would not have made a deed to her place had it not been for these representations of Daugherty. Afterwards, the

deeds were executed by the respective parties and the deal closed.

Boyce went upon the land, and his evidence is, that it did not come up to the representations made by the defendants. It was seven miles from Yates Center; that the house had only three finished rooms, and a place for two others; that the fences were of no value; that the orchard was not as good as represented; and that the value of the farm did not exceed $35 per acre, and the neighboring lands were selling for from $25 to $40 an acre. Other witnesses testified similarly. Defendants objected to the competency of Boyce as a witness to the value of the Kansas land, which the court overruled. The question asked was this: "After you had made inquiry and learned the price of neighboring land and what it had been selling for and seen the condition of the property as to improvements, etc., and location from Yates Center, what did you consider the place reasonably worth?"

The defendants in their testimony denied having made any false representations, but that the Kansas land was as they had represented it to the Boyces, and also introduced other evidence tending to show that plaintiffs had not been damaged by reason of the exchange. They offered evidence for the purpose of showing that the house and lot in Columbia was worth only $4500 at the time of the trade, and also evidence to show that the trading value of real estate is less than the cash market value. The court refused the offer.

The defendants objected to two instructions given for plaintiffs but particularly to that numbered 5 which reads as follows: "You are further instructed that should you find for plaintiffs, the measure of damages is such sum or amount, as you may, from the evidence, believe was the difference between the actual market value of the land conveyed to plaintiffs, at the time it was conveyed to the plaintiffs, and what would

have been its value at the time, had it been in point of quality, condition, location and value as represented by defendants, not exceeding the sum of four thousand dollars.''

The plaintiffs recovered judgment for $3000 and defendants each sued out his separate writ of error.

The ruling of the court in admitting the evidence of Mr. Boyce as to the value of the Kansas land, is urged as a serious error. Mr. Boyce was a farmer and as such we presume he had the usual knowledge possessed by farmers concerning the nature, quality and productiveness of soils, but as such he would have to possess additional information before he would be allowed to speak as to market values. This knowledge he could not obtain by the study of any particular science, because it is not a matter of science. Land is not a commodity that has a general market value. The price of land is subject to various conditions, such as location, character of soil and climate. A real estate agent at Columbia would not as such be a competent witness as to the market value of land in Kansas. This statement goes to show that testimony of this sort is not admitted upon the theory that the witness is a skilled expert, but merely because he has knowledge of the prices at which land is selling in a given locality. We are of the opinion that such knowledge acquired in the ordinary manner would be sufficient. The market value of land is controlled by the price at which it is generally selling, and any person who knows, whether by personal knowledge or by being informed as to the selling price of the land in that locality, is competent to speak as to its value.

The witness was a farmer and when he went to Kansas he made it his business to find out what land was selling for in the locality. In this way he had all the information any one could have had. The admission of his evidence was largely one of discretion in

the court, which the appellate courts do not interfere with unless abused, which we do not think it was in this instance. [Spring Co. v. Edgar, 99 U. S. 645; Bryan v. Town of Bradford, 50 Conn. 246.]

The defendant's offer to prove that there is a difference between the market cash value of real estate and its trading value was properly rejected. The professed object for the introduction of this testimony was first, that: "It was proper to prove that as this transaction was a trade and not a sale, the plaintiffs had not been damaged at all as the valuations were fixed not on a cash basis, but with reference to other property which might or might not realize the sum mentioned," and secondly to show that plaintiffs were not damaged to the amount they claimed to have been. The proposed evidence was not admissible as it could not effect the measure of damages. The measure of damages was properly expressed in instruction numbered 5 given at plaintiff's instance. It will be observed that the court limited the amount of plaintiff's recovery to the difference between the value of the Kansas land at the time it was conveyed to plaintiffs and what would have been its value if it had been in point of quality, location and value as represented by defendants. The defendants' assumption is that in the exchange of lands the exaggerations or representations as to value are greater than when the transaction is based on cash sales and that such being the case the difference in the actual value of the properties exchanged is or ought to be the measure of damages. This rule if enforced would eliminate the element of gain, if any, the party might have in the contract itself, and confine his damages to compensation for actual loss. In support of the theory we are referred to Thompson v. Newell, 118 Mo. App. 405, where we find this expression, "the basic principle is compensation for actual loss sustained as the direct result of

the wrong." This was but a statement of elementary law, and used in its general sense.

It is well established in this state that the benefits or gains of a bargain are proper elements of damages in cases of *ex delicto* based upon fraud and deceit. [Kendrick v. Ryus, 225 Mo. 150; Hawman v. McLean, 139 Mo. App. 429; Caldwell v. Henry, 76 Mo. 1. c. 257; Warner v. Winfrey, 142 Mo. App. 298.] And the value of the Columbia property was not an issue in the case. [Chase v. Rusk, 90 Mo. App. 25; Kendrick v. Ryus, supra; Warner v. Winfrey, supra.]

All the instructions given for plaintiffs are in harmony with the theories of the appellate courts of the state on the subject. There are other suggestions of error, but they are not serious enough to demand special attention.

Affirmed as to both defendants in error. All concur.