STATE of Missouri, Respondent,

v.

Albert E. WILLIS, Appellant.

No. 44645.

Supreme Court of Missouri.
Division No. 2.

Nov. 14, 1955.

Wm. J. Gilwee, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The appellant, Albert E. Willis, was convicted by a jury in the Circuit Court of Lafayette County, Missouri of the crime of grand larceny based on an information alleging the theft of twenty journal brass of the value of $120, belonging to Missouri Pacific Railroad Company. Appellant's punishment was assessed at two years in the penitentiary. His motion for new trial was overruled and he appealed. The conviction to be reviewed is a felony and jurisdiction of the appeal is properly in the supreme court. Article V, § 3, Constitution of Missouri 1945, V.A.M.S.

Defendant did not take the stand and no evidence was offered on his behalf. The state's evidence tended to prove that on or about July 7, 1952, between fifteen and twenty refrigerator cars were placed on a siding at Myrick, near Lexington, for the purpose of conditioning them for potato loading. On July 10th it was discovered that "journal brass" were missing from a number of the cars. Journal brass is a kind of bearing commonly used on the journal or axle of a freight car. Somewhere between twenty and thirty-four of the journal brass were missing. Their value at the time was $6.58 apiece; that is

what it would cost to replace each of those taken.

James E. Pratt, Melvin Fields and the appellant were arrested in connection with the theft of journal brass from railroads and on February 17, 1953, the appellant gave and subscribed a written statement which was taken in the office of the Burglary Bureau of the Kansas City, Missouri Police Department by Detective H. D. Coffman. The statement, introduced in evidence as State's Exhibit No. 2, after giving information relating to appellant's name, age and residence, further reads in part as follows:

"Q. Al you have previously made a statement regarding the theft of brass from the Union Pacific Railroad at Bonner Springs, Kansas, have you not? A. Yes.

"Q. Now it is my understanding that you wish to clear up all the brass thefts you have committed from the various railroads is that right? A. Yes.

"Q. Now just tell us to the best of your knowledge where all the places are, that you have committed brass thefts. A. Well the first time was last summer in about July, and Jimmie Pratt and I went down in the east bottoms and stole some brass out of a storage box near the Kansas City Southern Roundhouse. Also Floyd DeJeager was along. We got $130.00 worth at that time. Then, later, me and Melvin Fields went back down there and got some more brass, but I don't remember how much there was. Then after that Jimmie Pratt and me went back again to the storage boxes and got quite a bit of brass but we never got as much as we did the first time. Then sometime later, Melvin Fields and me went over to Randolph, Mo., to the Wabash yards and Melvin jacked up some cars there and we took ten or twelve journal brass from the cars. Then after that, Melvin and me went to *Myric,* Mo., on the Missouri Pacific railroad and jacked up some

more cars and took some brass from these. I think we took about twenty or twenty five from these cars.

"Q. Where did you sell all this brass that you men had got from these railroads? A. We sold it out in Centropolis, I believe it is the Empire Metal Co., and we sold it to a man whom I now know as William A. Green.

"Q. How much did you sell it for? A. We got ten cents a pound straight for it."

H. D. Coffman, who had left the Kansas City Police Department and was a lieutenant of police for the Wabash Railroad at the time of the trial, identified the statement, Exhibit No. 2, and testified that he told the appellant and Melvin Fields that there would be but one prosecution in connection with the various offenses in return for their cooperation on the various thefts. involved. Coffman testified, however, that he made no promises with respect to the prosecution in Lafayette County. George E. Callen, one of the witnesses to the statement, testified that he was present when the statement was taken and that no promises were made to the appellant by him or any one else. Other of state's witnesses testified that no promises were made, and the question of whether the appellant's statement was voluntary was submitted to the jury under instructions about which no complaint is made.

James E. Pratt, on behalf of the state, testified that he, together with appellant and Melvin Fields, took the brass at Myrick and sold it; that he (Pratt) pleaded guilty, was. sentenced to three years in the Missouri State Penitentiary and that he had served his time and had been released.

The appellant undertakes to present these questions on appeal: (1) There was a complete lack of evidence sufficient to convict defendant of grand larceny as a matter of law; (2) The prosecuting attorney in introducing Exhibit No. 2 in evidence and reading the whole statement to the jury committed reversible error in referring to other purported crimes of the defendant, especial-

ly when the defendant failed to testify; (3) The prosecuting attorney in asking the direct question of the witness for the state, "Do you know whether or not this defendant was ever convicted of any related offense any place else?" committed a plain error affecting substantial rights of the defendant, which comes within the purview of Rule 3.27 of the Supreme Court of Missouri, 42 V.A.M.S.

At the onset the appellant concedes that the record is insufficient to preserve these questions properly for review. He asks us to consider them "plain errors affecting substantial rights", as that term is used in Rule 3.27, and under that guise take cognizance of the alleged errors. Rule 3.27 cannot aid the appellant since the rule is one of civil procedure and is inapplicable to appeals in criminal cases. State v. Stidham, Mo., 258 S.W.2d 620, 621.

In his motion for new trial the appellant charges that there was "a lack of probative evidence sufficient to convict defendant of grand larceny" in that the state offered no evidence as to the actual value of the property taken from the railroad. In his brief on appeal the appellant contends that the evidence adduced by the state to prove the value of the property alleged to have been taken was "clearly hearsay"; that such evidence would have been excluded if objected to and without the evidence there would then have been a total failure of proof with respect to the value of the property involved. We cannot agree that the evidence referred to is "clearly hearsay." The trial court might properly have overruled such an objection if one had been made. Moreover, relevant evidence received without objection may be considered by the jury although it would have been excluded on proper objection. Even hearsay evidence so admitted may be considered. Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535.

W. Z. Heady, an employee of the Missouri Pacific Railroad for twenty-one years and an investigator and sergeant of police at the time of the trial, testified without objection that the value of the journal brass at the time they were taken was $6.58 apiece; that is what it would cost to replace the ones that were taken. The witness was not cross-examined on this subject matter, and his experience and competency were not further developed. We cannot say from this record that the witness was not qualified to testify as to the value of the stolen property. He may have been so qualified, either by personal knowledge or by being informed as to the value. Boyce v. Gingrich, 154 Mo.App. 198, 134 S.W. 79. Because of his failure to cross-examine the witness to develop the matter of his qualifications, the appellant is not in a position to complain that the witness was not qualified. State v. Hill, 329 Mo. 223, 44 S.W.2d 103, 108. If a timely and proper objection had been made at the trial and the evidence ruled out, the state would have had an opportunity to offer other evidence in lieu of that successfully attacked. The ends of justice would not be served by permitting the appellant to attack the evidence of value belatedly and for no good reason. The cases cited by the appellant in support of his contention are those in which there was a total failure of proof and which therefore do not rule the present situation.

The other two questions the appellant undertakes to present for decision are related ones. First he contends that the state committed reversible error "in referring to other purported crimes of the defendant, especially when the defendant failed to testify" by introducing in evidence Exhibit No. 2 and reading the whole statement to the jury. When this exhibit was offered in evidence, defendant's counsel stated, "Save the objection" and the court ruled "Admitted in evidence." Nor did the motion for new trial set forth with particularity the ground of objection now urged for reversal and a new trial. Supreme Court Rule No. 27.20 requires that the motion for new trial in a criminal case "must set forth in detail and with particularity * * * the specific grounds or causes therefor." This the defendant failed to do, and therefore the question is not reviewable. See also State v. Gaddy, Mo.,

261 S.W.2d 65, 67; State v. Davis, Mo., 251 S.W.2d 610, 616, wherein it is held that the objection must be sufficiently specific to call the attention of the trial court to the ground upon which the objection is made and that the appellant's brief may not supply deficiencies in his motion for new trial.

■ The remaining contention urged by the appellant is that the prosecuting attorney committed a "plain error" in asking the witness Callen on direct examination the question, "Do you know whether or not this defendant was ever convicted of any related offense at any place?" which brought forth the answer, "Well, since the date of this statement I think that he was convicted in the State of Kansas." Defendant made no objection whatever to this question, nor was it alleged as error in the motion for new trial. By virtue of Supreme Court Rule 27.20, the authorities immediately above cited, and State v. Baker, Mo., 277 S.W.2d 627, 631, this contention is likewise not subject to review.

■ Further, the appellant would be in no position to complain if timely and proper objections had been made, since the subject of other offenses was first opened up and brought into the case by the defendant's own questions. State v. Crocker, Mo., 275 S.W.2d 293, 296.

Prior to the introduction by the state of Exhibit No. 2 in evidence or the asking of the question of which complaint is now made, defendant's counsel cross-examined the witness Heady as to his knowledge of thefts of brass from other railroads. He also asked "how many people were arrested in regard to this matter" and also whether the witness had "any knowledge of why Willis was taken to Kansas City, Kansas on a charge similar to this, and why Pratt was brought to Lexington, Missouri, on that charge similar to this." The same question was asked about Fields. Defendant's counsel then asked the witness whether there was a discussion "with any of the other special police for other railroads, to the effect that these boys were going to be divided up and one railroad would prosecute in one place, another in another place, and another in another place." He then asked if the witness knew "of any of the other two of these boys that have been prosecuted in more than one place" and was told by the witness that Pratt was prosecuted "down here" and was also prosecuted in Kansas City. Defendant's counsel then undertook to establish that the defendant was "the first defendant that is being prosecuted twice for this group of incidents on or about or immediately after July 7, 1952." To this question an objection was sustained on the ground that this was a legal question for the court to determine. Cross-examination of other witnesses tended to indicate that the defendant was undertaking to establish as a defense that there was a breach of an agreement to prosecute defendant Willis a single time for the several offenses covered by his signed statement.

■ Respondent filed a motion to dismiss the appeal because the appellant did not give notice that he was appealing from the final judgment. Thereafter, appellant's application to file a notice of appeal out of time was sustained and the deficiency, if any, of which the respondent complained was cured. Respondent's motion to dismiss the appeal is therefore overruled.

Appellant's contentions are ruled against him and the judgment is affirmed.

All concur.