STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Mis-
souri, Respondent,

v.

Mary BARRON et al., on Exceptions of Man-
chester Shopping Center, Inc., a
Corporation, Appellant.

No. 51746.

Supreme Court of Missouri,
Division No. 1.

March 14, 1966.

John Rickhoff, Walter Wehrle, Clayton, for appellant.

Robert L. Hyder, Jefferson City, C. J. McEnery, Jr., Kirkwood, for respondent.

HOUSER, Commissioner.

State Highway Commission · condemned a strip of land approximately 35 feet wide and 596 feet long out of the property of Manchester Shopping Center, Inc. located on the south side of Manchester Road in the City of Manchester in St. Louis County. This is an appeal from a judgment entered upon a jury verdict for $7,500 following a trial of the landowner's exceptions to the commissioners' award of $7,000. Landowner claimed damages in the amount of $60,000 and offered evidence in support thereof. The amount in dispute therefore exceeds $15,000. Ac-

cordingly, we have appellate jurisdiction. City of St. Louis v. Union Quarry & Construction Co., Mo.Sup., 394 S.W.2d 300; State ex rel. Kansas City Power & Light Co. v. Salmark Home Builders, Inc., Mo. Sup., 350 S.W.2d 771; Constitution, Art. V, § 3, V.A.M.S.; § 477.040, V.A.M.S.

The condemned strip, approximately 20,-000 square feet, was taken out of a tract of 10.8 acres purchased as raw land in October, 1959 for $88,241.78. The entire tract fronted 596 feet on Manchester Road and had a depth of 1,000 feet on the west and 500 feet on the east. A creek formed the rear boundary. The property was graded at considerable expense and a shopping center was built on the front part of the property in 1960. It consisted of two buildings containing 10 stores and a parking lot with spaces for 175 cars. The president of the corporation testified that the total cost of land and buildings was $420,183.19; that the cost of grading the 35-foot strip was $8,989.62, the cost of crushed rock put on the strip was $2,285 and the cost of a sign erected on the strip (removed by the taking) was $3,216.60; that taking the strip reduced the number of parking spaces in front of the buildings by 50—from 175 to 125. Landowner's witnesses estimated the damages, including the value of the land taken, the reduction of the number of parking spaces and the change from a level entrance from Manchester Road to two abrupt, steep entrances, at from $60,000 to $65,425 on the basis of market value of the entire tract before and after the taking. The commission's witnesses placed the damages at from $5,500 to $6,700.

The substance of the sole point raised by appellant is that the court erred in admitting and not striking the testimony of the commission's expert witness Tom McReynolds who, in developing the basis for the expression of his opinion as to the market value of the subject property, stated various details relating to recent sales of other properties in the vicinity. Appellant concedes that a witness giving his opinion as to value may state the reasons for his opinion and may state any circumstances which he would be allowed to give in evidence as independent facts, but argues that "he cannot under the guise of fortifying his opinion state to the jury any facts that are based on hearsay." It is appellant's position that Mr. McReynolds' testimony with reference to the other sales was not based upon firsthand knowledge of those sales but upon hearsay. It is also urged that Mr. McReynolds erroneously was permitted to state that said sales were comparable to the subject property.

Tom McReynolds, a real estate appraiser whose *general* qualifications are not questioned, testified as follows: He first became acquainted with the property in the summer of 1959 when it was vacant ground. He appraised it as vacant ground. Later he appraised it as of the value date in this case, as fully developed property. He found the before-taking value to be $328,200, valuing the land at $69,000 and the improvements at $259,200. The value of the improvements was arrived at on the basis of the square feet of building area, plus the square feet of concrete and asphalt paving and the damages in connection with moving the signs and light standards. He gave the value after the taking as $322,704, or $64,006 for the land and $258,698 for the improvements. He arrived at the land value as a result of several years of appraising property along Manchester Road, beginning in 1956, by studying and considering recent sales of property fronting on Manchester Road and other factors to which reference will be made. He particularly described four properties of 3.46 acres, 4.97 acres, 9.8 acres and 50 acres, respectively, located on the south side of Manchester Road within a half mile east of the subject property, which were sold from 1957 through 1960. These tracts were located outside the city limits of Manchester but were zoned for the same uses for which the subject property was zoned. In each instance Mr. McReynolds gave the name of the pur-

chaser, distance from the subject property, date of sale, dimensions, acreage, contour, terrain, and book and page of the deed records where the transaction was recorded. He also described a property sold in 1963, a one-acre tract located 2800 feet east of the subject property. His original information as to these sales came from investigating the land records, after which he consulted the purchasers to verify the amounts paid, relying upon what the purchasers told him. *In no case, however, did he state to the jury the amount of the purchase price.* In forming his opinion he relied in part upon these sales and upon an investigation he made of a number of other sales of properties all along on both sides of Manchester Road from Mason Road on the east to Clarkson Road on the west (a distance of six miles) while appraising for the state highway department, as supplemented by information gathered on subsequent appraisals for a number of private individuals on Manchester Road. (An objection to the testimony about the 50-acre tract was sustained on the ground that it was not comparable. Numerous objections to the results of his search of the records, on the basis of the best evidence rule, and to the verifications of purchase price given by the purchasers, on the basis of the hearsay rule, were duly made and consistently overruled.) Mr. McReynolds' opinion, based partly upon the sales of the foregoing properties and purchase prices paid for them, was also based upon other factors which he stated a reasonably prudent buyer would take into consideration in buying a shopping center, such as location, accessibility, quality and size of improvements, ingress and egress, type and character of tenants, the leases, rentals, available parking facilities, competition and rate of population growth in the area. His final conclusion was that the damages to the land amounted to $4,994 or $5,000 in round numbers, plus $500, the

cost of relocating the sign, or a total damage of $5,500.

■ We have concluded that the court did not err in admitting the opinion testimony of this witness as to the value of the subject property before and after the taking, based in part upon what he ascertained by investigating the land records and what the purchasers told him they paid for these properties.

■ We approve and endorse the following statement of the law on this subject as recently expounded by Ruark, J. in State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc., Mo.App., 381 S.W.2d 20, 1. c. 23, 24, 25: "There is no exact rule by which the qualification of a witness to testify as to the value of land can be measured. Love v. United States, 8th Cir., 141 F.2d 981, 984. As a general rule, the market value of real estate is established by voluntary sales of other similar property made in the same general vicinity and not too remote in time. Jackson County v. Meyer, Mo., 356 S.W.2d 892, and cases at 894; Missouri Public Service Co. v. Hunt, Mo.App., 274 S.W.2d 27; City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W. 2d 853; 85 A.L.R.2d 110, 119.[1] Consequently the witness (other than the owner) must, in ordinary circumstances, have some knowledge or information as to sales of similar or comparable property. Generally stated, the knowledge of the witness must be such as is demanded by the nature of the subject matter and such as can reasonably be expected in the circumstances. The means of knowledge, and therefore the requirements in respect to qualification, may be higher in an area where there are frequent sales of similar property and lower where such sales are infrequent or nonexistent. 32 C.J.S. Evidence § 545, p. 301; Orgel, Valuation under Eminent Domain, § 138, p. 589. This has sometimes been referred to as a 'sliding scale' standard. See

---

1. Contrary as to sales of dissimilar property. School Dist. of Kansas City v. Phoenix Land & Improvement Co., 297 Mo. 332, 249 S.W. 51; St. Louis Electric Terminal R. Co. v. MacAdaras, 257 Mo. 448, 166 S.W. 307.

159 A.L.R. Anno. 14–16. And the tendency is to admit any evidence which sheds light on the question, leaving it to the discretion of the trial court to keep it within bounds. Artificial rules of evidence which exclude from the jury matters which men consider in their everyday affairs hinder, rather than help, the arrival at a just result. United States v. 25,406 Acres of Land, 4th Cir., 172 F.2d 990.

"One need not be an 'expert,' in the sense that word is ordinarily used, to testify as to the value of land. If the witness knows or has inspected the property, and if he has such information, knowledge, and skill which enable him to form an intelligent judgment, and if this knowledge and information is superior to that possessed by the ordinary person who composes the jury, then he should be permitted to testify. Beyond that any deficiency he may have goes to the weight of his testimony, not to the qualification. 32 C.J.S. Evidence supra, § 545, p. 301 et seq.; Lewis, Eminent Domain, 3d Ed., Vol. II, § 656; State ex rel. Burcham v. Drainage Dist. No. 25, Mo. App., 272 S.W.2d 712; Wipfler v. Basler, Mo., 250 S.W.2d 982 (14); State ex rel. State Highway Commission v. Devenyns, Mo.App., 179 S.W.2d 740; see Alexander v. Llewellyn, Mo.App., 70 S.W.2d 115. As was said by Bennick in City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, l. c. 157:

" ' * * * the considerations which govern the admissibility of opinion evidence are, for practical purposes, identical with those that actuate ordinarily prudent persons in looking for advice in connection with the conduct of their own personal business affairs. It follows, therefore, that if a witness, whatever his occupation or profession, is one whose opinion would be sought after and given weight by ordinarily prudent persons seeking information upon the question of the value of or damage done to the property which is the subject of the inquiry, he is competent to give his opinion in evidence in the case so far as the matter of his qualification is concerned.'

One may add to, and sometimes acquire, the superior knowledge which qualifies him to testify as to value by making a study and inquiry as to such sales. Boyce v. Gingrich, 154 Mo.App. 198, 134 S.W. 79; Brayton v. Gunby, Mo.App., 267 S.W. 450; Ruddy v. Gunby, Mo.App., 180 S.W. 1043; see Hotchner v. Liebowits, Mo.App., 341 S.W.2d 319, 329. As a matter of fact, it has been said that an expert should make careful inquiry into the facts concerning similar sales upon which he bases his opinion as to land values. State ex rel. State Highway Commission v. Dockery, Mo., 340 S.W.2d 689, 695. He may take into consideration the consideration stated in a deed as a source of information. Ramming Real Estate Co. v. United States, 8th Cir., 122 F.2d 892, 895. And his competency as an expert may not be attacked on the ground that he has considered hearsay or sales that would otherwise be inadmissible. 159 A.L.R., Anno. pp. 43–44; City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839, 849; United States v. 5139.5 Acres of Land, 4th Cir., 200 F.2d 659; see State ex rel. State Highway Commission of Missouri v. Craighead, Mo.App., 65 S.W.2d 145, 149.

" 'An expert quite frequently bases his opinion of value to some degree on what he learned through inquiry and investigation. To be sure, such inquiry and investigation constitute purely hearsay and are inadmissible; but as Mr. Justice HOLMES said: "An expert may testify to value although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience." ' Jahr, Eminent Domain, Valuation and Procedure § 134, p. 207." (Our emphasis.)

 It is the general experience and observation of an expert witness that qualifies him. Nichols on Eminent Domain, 3rd ed., Vol. 5, § 18.4 [4], pp. 214, 215. His knowledge and expertise is acquired from many sources, some of which are hearsay sources as a matter of necessity. For instance, a well-qualified expert ordinarily

attempts to exhaust the prior learning in the field. This necessarily involves the absorption of much data based upon or constituting hearsay, such as statements in textbooks, lectures by those professing specialized knowledge, opinions and experiences of others, etc. See United States v. Katz, 1st Cir., 213 F.2d 799, 801. As stated in Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279, 285: "The knowledge that the best experts possess upon this subject is derived from hearsay. It is not necessary that they should be actually present and personally know the sale," and in Winklemans v. Des Moines N. W. R. Co., 62 Iowa 11, 17 N.W. 82, 83: "The knowledge which qualifies a witness to testify as to values, must necessarily consist largely of hearsay. The examination of market reports, and information acquired from others, as to sales of property qualifies a witness to testify as to values." The hearsay and best evidence rules should not be applied to prevent an expert witness from giving the basis of his opinion. United States v. 5139.5 Acres of Land, 4th Cir., 200 F.2d 659, 662 [7].

■ The objection that the court erred in permitting the witness to testify that the sales were comparable is not well taken for two reasons. In the first place, he did not so testify. In the second place, the testimony as to other properties and other sales was not offered or admitted as independent substantive evidence of the value of the subject property, but in support of and as background for the opinion of the expert. In such case the details of the sales upon which the expert bases his opinion are admissible as a basis for the opinion he expresses. Nichols on Eminent Domain, 3rd ed., Vol. 5, § 18.42 [1], p. 253; United States v. Johnson, 9th Cir., 285 F.2d 35, 40 [5], 41 [6].

■ Appellant further contends that if the testimony was admissible the court nevertheless erred in refusing its Instruction A by which the jury would have been instructed that "testimony by witnesses not having first-hand knowledge of the matter stated that certain properties had sold shall not be considered as evidence that such properties have sold, or as evidence of the market value of the property involved, but may only be considered as being information which the witnesses testified they gathered for the purpose of forming an opinion of the market value of the property involved." There was no error in refusing Instruction A. Evidently it was patterned after an instruction used in a Texas case appellant cites. As there worded it was relevant. In that case the purchase price supposed to have been paid for the other comparable property was stated to the jury. Such an instruction would be irrelevant in this case, in which the purchase prices paid for the other properties were not divulged. As the instruction was reformed and redrafted for use in this case it does not fit the case. It is internally confusing. It was apparently intended as a cautionary instruction. Whether a cautionary instruction should be given is a matter within the discretion of the trial judge. It is not a matter of right. Shell Pipe Line Corp. v. Bruns, Mo.App., 239 S.W.2d 546, 550 [4]; State ex rel. State Highway Comm. v. Warner, Mo.App., 361 S.W.2d 159 [12]. Given Instructions 5 and 6 adequately and properly cautioned the jury on the weight and value to be given the opinions and testimony of the witnesses. In refusing Instruction No. A the trial court exercised a wise discretion because, read in connection with Instructions 5 and 6, it would have been misleading and confusing, if not contradictory.

No error appearing in any respect suggested, the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.