STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff-Appellant,

v.

R.C. McNARY, et al., Exceptions of Farview Cattle Company, Inc., Defendant-Respondent.

No. WD 33818.

Missouri Court of Appeals, Western District.

Jan. 10, 1984.

Bruce A. Ring, Jefferson City, Earl H. Schrader, Jr., James B. Jackson, Missouri Highway and Transp. Com'n, Kansas City, for plaintiff-appellant.

Bert H. Jacob, Jacob & Zuber, Kansas City, for defendant-respondent.

Before SOMERVILLE, P.J., and SHANGLER and MANFORD, JJ.

SOMERVILLE, Presiding Judge.

Condemnor (hereinafter State) appeals from a judgment for damages in a condemnation case in the amount of $70,000.00 in favor of landowner Farview Cattle Company, Inc. (hereinafter Farview).

Rights and interests in land, to-wit, 29.76 acres taken, 2.1 acres for a temporary easement and .27 acres for a permanent easement, situate in Caldwell County, Missouri, were acquired by the State in conjunction with the relocation and reconstruction of Missouri Route 13. The date of taking was January 15, 1975. Exceptions were filed by Farview and the case was tried to a jury in Jackson County on change of venue.

Immediately before the date of taking, Farview owned 342 acres of land, crossed by old Missouri Route 13, which was devoted to the production and sale of registered cattle. The land was located approximately one and a quarter miles south of Hamilton, Missouri, and was highly improved. Two residences and multiple buildings and facili-

ties appropriate for a registered cattle operation, along with attendant fences, ponds, trees and terraces, were situate thereon. Old Missouri Route 13 meandered across the 342 acres of land on a high ridge giving traffic in both directions a panoramic view of the land, thus providing a natural "showcase" for Farview's registered cattle business. According to Farview's evidence, the highest and best use of the 342 acres immediately before the taking was operation of a registered cattle business except for a small acreage on the north part which lent itself to being subdivided for residential purposes due to its close proximity to Hamilton, Missouri.

Certain improvements, both natural and man-made, were on the land taken by the State, e.g. trees, a pond and fresh water spring, sections of terraces, sections of fences, and a 20' × 20' shed. The contour of the land taken resulted in several irregular shaped tracts in parts of the remainder. Access to old Missouri Route 13 was unlimited; Missouri Route 13 as relocated and reconstructed became a limited access highway. After the taking Farview's access was limited to seven 20-foot entrances scattered at random points along Missouri Route 13.

Several sections of paved slabs of old Missouri Route 13 were abandoned by the State on Farview's remaining property due to the course of Missouri Route 13 as relocated. Certain portions of preexisting fencing were taken, other portions, in part, were rendered obsolete, and certain additional fencing was required after the taking. Regarding terraces taken, erosion problems were subsequently encountered. According to Farview, the use to which the 2.1 acre temporary easement was put during the ensuing four-year construction period blocked access to 8.93 acres of its remaining land.

Homer Keith Snider, president of Farview, testified that the fair market value of the property in question immediately before January 15, 1975, was $400,000.00 and that its fair market value immediately thereafter was $250,000.00, and fixed the resultant

damages at $150,000.00. The only expert witness called by Farview testified that the before value was $390,000.00, the after value was $257,000.00, and fixed the resultant damages at $132,500.00. Three expert witnesses were called by the State. They testified that the before value was, respectively, $284,000.00, $274,000.00, and $287,500.00, that the after value was, respectively, $250,000.00, $234,400.00 and $253,000.00. Accordingly, they testified that damages occasioned by the taking were, respectively, $34,000.00, $39,600.00 and $34,400.00.

The State raises five points of error on appeal, all involving the admission or exclusion of certain evidence pertaining to component elements of post taking damages. *One:* the trial court erred in admitting, over the State's objection, evidence adduced by Farview that post taking use of the 2.1 acre temporary easement during the four-year construction period denied it access to 8.93 acres of the remaining land, thereby reducing the after value of its land an additional $4,480.00. *Two:* the trial court erred in admitting, over the State's objection, evidence adduced by Farview as to both the value of preexisting fences taken and the cost of fencing required after taking as elements of damage diminishing the value of the remaining land immediately after the taking, thereby resulting in the recovery of "double damages". *Three:* the trial court erred in admitting, over the State's objection, evidence adduced by Farview as to the cost of removing slabs of abandoned pavement as an element of damage diminishing the value of the remaining land immediately after the taking, thereby resulting in cumulative damages for the same taking. *Four:* the trial court erred, as a matter of "plain error", in admitting evidence adduced by Farview as to damages occasioned by restrictions on the movement of cattle along and across Missouri Route 13, a limited access highway, in view of § 270.070, RSMo 1969.[1] *Five:* the trial court erred in sustaining Farview's objection to an offer of proof by the State rebut-

ting evidence of Farview that the remaining land after the taking was adversely affected for use as a registered cattle operation.

All five points relied on by the State on appeal will be seriately discussed. Although this court readily acknowledges that a ruling on one of several points would dispose of the appeal, all points will be addressed, albeit in varying degrees, in the hope of eliminating any reoccurrence of error in the same vein on retrial.

Point *One* revolves around certain testimony of Farview's expert witness as to the amount of damages attributable to the 2.1 acre temporary construction easement acquired by the State. In addition to testifying as to the reasonable rental value of the 2.1 acre temporary easement during the four-year construction period, Farview's expert witness further testified that use of the 2.1 acre temporary easement during the four-year construction period blocked Farview's access to 8.93 acres of its remaining land, thereby causing Farview to suffer additional damages in the amount of $4,480.00.

The answer to point *One* lies in certain basic principles of condemnation law. Tracking an ancient and well-established line of case authority, MAI 9.02, captioned "Damages—Eminent Domain—Part of Property Taken", the only damage instruction given below, directs that the measure of a landowner's damage is "the difference between the fair market value of defendant's whole property immediately before the taking [on (insert date of appropriation)] and the value of defendant's remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken". Accordingly, damages in a condemnation case are temporally restricted in that they are to be determined with reference to the time of taking or appropriation

---

1. This point, admittedly, was raised and mentioned for the first time in the State's motion for new trial. Moreover, § 270.070, RSMo

1969, was never offered into evidence by the State.

rather than with reference to the time of trial or to the time of construction. See, e.g., *KAMO Electric Cooperative v. Baker,* 365 Mo. 814, 287 S.W.2d 858, 861 (1956).

 Elements of damage arising from the acquisition of temporary easements are spelled out in *City of Cape Girardeau v. Hunze,* 314 Mo. 438, 284 S.W. 471 (1926). The court, in placing its imprimatur on an instruction in question, held that it properly "told the jury that they shall award to appellants *the reasonable rental value* of the land temporarily acquired for the time which plaintiff proposed to use it absolutely, i.e., from the date of the commissioners' report until January 1, 1924, and (besides) the damages which the jury might find from the evidence *will* result to appellants' remaining land because of such temporary use." (emphasis added) Id. at 480. *KAMO Electric Cooperative v. Baker,* supra, although dealing with construction damages occasioned by use of a permanent easement following the date of taking or appropriation, accommodated the element of consequential damages within the perimeters of the general principle set forth in the preceding paragraph by explicating the criteria for permitting evidence of damages which *"will"* result to a landowner's remaining land occasioned by use of an easement during construction. The court in *KAMO* tied evidence of ensuing damages occurring during construction to the date of taking by requiring a direct evidentiary nexus between construction damages and "the extent of the burden cast upon the land *at the time of the appropriation,* provided that the acts were not tortious and the damage could have been reasonably anticipated." Id. at 862. To comport with the basic principle that damages in a condemnation case are determinable with reference to the date of appropriation, *KAMO* applied a test of foreseeability. If ensuing damages arising from condemnation are tortious or are not foreseeable as of the date of appropriation, they do not constitute a burden upon the land at the time of taking. In order for evidence of post taking construction damages to be admissible in a trial for damages in a condemnation

case, a foundation must be laid that such damages were not tortiously inflicted and were foreseeable at the time of taking. Absent such a foundation, such damages do not constitute a "burden cast upon the land at the time of the appropriation." The record on appeal in the instant case fails to reveal the laying of a requisite foundation to support the testimony by Farview's expert witness that the landowner suffered $4,480.00 in additional damages as a result of the use of the 2.1 acre temporary easement during the four-year construction period. The admissibility of such evidence was prejudicial and, standing alone, warrants reversal and remand for a new trial.

Point *Two* injects a rather elusive issue since valuation of fencing as a component of damages in condemnation cases weaves a fragmented course through a limited number of cases in this state. The issue surfaces in this case by reason of testimony by Farview's expert witness that the remaining land after the taking was further diminished in value because of fences "taken", computed at $8,838.00, and "additional fencing required", computed at $8,768.00. The State vigorously contends on appeal that admission of testimony as to both the value of fences "taken" and the cost of "additional fencing required" prejudicially terminated in the recovery of double damages with respect to fencing as a component of damages diminishing the value of the remaining land. Suffice it to say, Farview's contention that the complained of testimony was not timely objected to at trial and, hence, not properly preserved for appellate review, is counter to the record.

 Consistent with MAI 9.02, supra, existing fences, if they enhance the value of land, may be considered in determining the fair market value of land immediately before the date of appropriation. With respect to improvements on land in general, "[t]he value of buildings and fixtures is only important as affecting the value of land being condemned, if the *land* is thereby enhanced in value." *Proceedings for Condemnation v. National Engineering and*

*Mfg. Co.,* 274 S.W.2d 490, 492 (Mo.App. 1955).

■ The cost of additional fencing necessary to utilize land remaining after the date of taking, rendered necessary to effect reasonable use and enjoyment of the remainder, is recognized as a component of damages in determining the value of the remaining land. *State ex rel. Highway Comm'n v. Bruening,* 326 S.W.2d 305, 311–12 (Mo.1959); *State ex rel. Highway Comm'n v. Haid,* 332 Mo. 606, 59 S.W.2d 1057, 1059 (banc 1933); and *In re Aiken v. Jackson County,* 262 Mo. 403, 171 S.W. 342, 346–47 (1914).

■ More directly in point, *State ex rel. Highway Comm'n v. Mink,* 292 S.W.2d 940 (Mo.App.1956), authoritatively condemns assessment of the "cost of fencing twice", or as put by the State in the case sub judice, "double damages" for the component of fencing as an item of damages. The relevancy and applicability of *Mink* in the instant case is readily apparent when the overall testimony of Farview's expert witness is put in proper perspective. A fair summarization of the record discloses that the expert witness considered existing fencing, along with other improvements, as enhancing the value of Farview's land in determining its fair market value immediately before the taking. Doing so properly accorded with obtaining case law. Moreover, testimony by Farview's expert witness as to the cost of "additional fencing required" properly accorded with obtaining case law. The expert witness got tangled in the barbwire of reversible error, however, when he testified that the cumulative value of fences "taken", as well as the cost of "additional fencing required", diminished the value of the remaining land. There is no escape from this conclusion as the value of fences "taken" was included "up front" to enhance the fair market value of Farview's land immediately before the taking. In sum, admission of evidence to the effect that the value of fences "taken" diminished the value of the remaining land was tantamount to authorizing recovery of "double damages" to the limited extent for which it

was admitted. The only remaining question is whether the admission of such evidence was prejudicial. Guidance for answering this question is found in *State ex rel. Highway Comm'n v. Select Properties, Inc.,* 612 S.W.2d 866, 869 (Mo.App.1981): "The admissibility of evidence in a condemnation case depends on whether it tends to help the jury in arriving at the issue of value and damages. *State ex rel. Highway Commission v. Texaco, Inc.,* 502 S.W.2d 284, 288 (Mo.1973). The admission or exclusion of evidence in land cases is within the discretion of the trial judge and 'errors in admission or exclusion of evidence will not result in reversal unless there is substantial and glaring injustice.' Id. at 289." The verdict of the jury awarding Farview $70,-000 in damages exceeded by some $30,-400.00 the highest amount of damages testified to by the State's expert witnesses. The cumulative sum of $8,838.00 for fences "taken", as testified to by Farview's expert witness, vis-a-vis the aforementioned sum of $30,400.00, can neither be said to be insignificant nor as having no direct bearing upon the amount awarded by the jury. Perforce, the admission of such evidence constituted reversible error because it was a catalyst of "substantial and glaring injustice."

Having concluded that points *One* and *Two* raised by the State command reversal of the judgment and remand for a new trial, the remaining three points will be briefly addressed solely for the purpose of offering some guidance on retrial.

Point *Three* raised by the State levels error at the admission of evidence adduced by Farview as to the cost of removing slabs of abandoned pavement as an element of damages diminishing the value of the remaining land. Briefly, Farview's expert witness testified that the value of the remaining land, among other bases, was diminished in the amount of $16,598.00 due to the presence of abandoned slabs of pavement. The amount just mentioned was arrived at by estimating the cost of removing the abandoned slabs at $18,750.00, less the value of 2.152 acres (valued at $2,152.00)

recovered thereby for agricultural use. Farview's expert witness further testified, albeit in broad, general terms, that removal of the slabs would facilitate the use of certain irregular shaped tracts of the remaining land lying between the new and old right of ways. The witness had previously testified that the irregular shaped tracts diminished the value of the remaining land in a certain dollar amount. The aforementioned testimony, as presented, skirts dangerously close to conveying to the jury the idea that recovery of 2.152 acres valued at $2,152.00, by removal of the slabs of abandoned pavement at a net cost of $16,598.00, correspondingly diminished the value of the remaining land in the latter amount. It is also susceptible of being construed as overlapping damages. Neither party has cited any pertinent cases on this point. Farview would be well advised on retrial to seriously reconsider the manner of presenting such evidence if it concludes that it is authoritatively relevant and probative.

■ Point *Four* relied on by the State pivots on whether it is reviewable under the "plain error" rule. Rule 84.13(c). This court declines the State's invitation to review point *Four* on the basis of "plain error". Rule 84.13(c) is rarely resorted to in civil cases, and "is reserved for those situations in which hatred, passion or prejudice has been engendered causing manifest injustice or a miscarriage of justice ... [and] [p]lain error is not a doctrine available to revive issues already abandoned by selection of trial strategy or by oversight." *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo. App.1980). Tested by the principles just enunciated, the State has failed to come forward with any justification for appellate review of point *Four* under the "plain error" rule.

■ Point *Five*, error on the part of the trial court in rejecting an offer of proof by the State ostensibly rebutting evidence of Farview that the remaining land was adversely affected for use as a registered cattle operation, arose in the following posture. Counsel for the State, during cross-examination of Homer Keith Snider, president of

Farview, elicited that Farview's income from its registered cattle operation "dropped two-thirds" in 1976, the year following the date of appropriation, to-wit, January 15, 1975. In presenting its case, the State adduced from one of its expert witnesses that starting in 1975 the registered cattle business in general went into a steep decline. It subsequently attempted, on direct examination of another of its witnesses, to show that starting in 1975 a general decline beset the registered cattle business in general on the theory that it constituted relevant proof that a registered cattle operation was not the highest and best use of Farview's land on the date of taking. Farview's objection thereto was sustained, and the State's controversial offer of proof was made and rejected.

The State's argument on appeal subsumes that a declining market for registered cattle in general resulted in the inexorable conclusion that all registered cattle operations would cease and that the land in question no longer lent itself, from the standpoint of its highest and best use, to the registered cattle business. The conclusion drawn by the State is patently fallacious as there is not an iota of evidence that Farview intended to abandon its registered cattle operation notwithstanding the adversities of a declining market. Moreover, the offer of proof was cumulative as the State had previously elicited from one of its own witnesses that the registered cattle business was in the throes of a declining market. Furthermore, it appears that the real purpose of the offer of proof was to rebut testimony elicited from Homer Keith Snider on cross-examination which the State itself invited and injected. Under the totality of the circumstances, the trial court did not abuse its discretion in rejecting the offer of proof.

Judgment reversed and cause remanded for a new trial.

All concur.