## DEL–MAR REDEVELOPMENT CORPORATION, Plaintiff-Appellant,

v.

## ASSOCIATED GARAGES, INC., Defendant-Respondent.

### No. 50077.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 24, 1987.

Gerard T. Carmody, Matthew D. Richardson, Michael J. Dittoe, St. Louis, for plaintiff-appellant.

J.B. Carter, St. Louis, for defendant-respondent.

SATZ, Judge.

Plaintiff, Del-Mar Redevelopment Corporation (Del-Mar), began this condemnation action against defendant, Associated Garages, Inc. (Associated) to acquire certain property owned by Associated. The property, improved with a self-service carwash, was condemned on November 9, 1982. The condemnation commissioners assessed Associated's damages at $233,000. Both Del-Mar and Associated filed exceptions to the commissioners' report. Del-Mar valued the property at $132,000 to $140,000. Associated valued it at $351,350 to $385,000. A jury trial was held to determine the fair market value of the property on the date of taking. The jury assessed Associated's damages at $350,000. Del-Mar appeals. We affirm.

Del-Mar raises three points on appeal. All three focus on the admissibility

of certain types of evidence in an eminent domain case. Initially we note the admission or exclusion of evidence is within the sound discretion of the trial judge. *State ex rel. Missouri Highway & Transportation Commission v. McNary*, 664 S.W.2d 589, 594 (Mo.App.1984). And, errors in admitting or excluding evidence will not result in reversal unless there is substantial and glaring injustice. *Id.* We find no instances of such "substantial and glaring injustice" in this case.

Del-Mar argues the trial court improperly denied its motion to strike the valuation testimony of one of Associated's appraisal experts, Garland Noonan. Del-Mar argues Noonan's testimony was incompetent because it was based solely on the "cost of replacement" method of valuing property. We disagree.

▪ Generally, the market value of real estate is established by "comparable sales". These are voluntary sales of other similar property made in the same general vicinity which are close in time to the date of taking. *See State ex rel. State Highway Commission v. Berkely School District*, 618 S.W.2d 195, 197 (Mo.App.1981). Our courts have also approved two other methods for arriving at fair market value: "cost of replacement" and "capitalization of income". *State ex rel. State Highway Commission v. Southern Development Co.*, 509 S.W.2d 18, 27 (Mo.1974); *Northeast Mo. Elec. Power Co-op. v. Fullerson*, 542 S.W.2d 26, 28 (Mo.App.1976).

Garland Noonan has been doing appraisals for approximately 25 years. Not only has he appraised carwashes, he also owns some. For purposes of valuing Associated's property, Noonan chose to use the cost of replacement method. Although not necessarily the most accurate approach to valuation, *see State ex rel. State Highway Commission v. Jasper*, 544 S.W.2d 554, 555 (Mo. banc 1976); 5 Nichols, *Eminent Domain* § 20.1, at 20–21 (3d ed. 1985), cost of replacement is an accepted method of determining fair market value of condemned property. *See Southern Development Co.*, 509 S.W.2d at 27.

▪ Del-Mar contends, however, the use of this method alone is error. Del-Mar misreads both the law and the testimony of Noonan. Evidence solely of the cost of construction of *new* facilities to replace condemned ones is improper for purposes of determining the value of land. *See State ex rel. State Highway Commission v. Moore*, 565 S.W.2d 810, 815 (Mo.App. 1978). A proper deduction must be made for depreciation. *See State ex rel. State Highway Commission v. Cone*, 338 S.W.2d 22, 27 (Mo.1960). Noonan did just that. He depreciated the cost by 15% and further explained the basis for selecting this figure. In addition, Noonan verified the cost figures acquired from the manufacturer of Associated's equipment with other builders in the area. He also consulted a national cost manual, Marshall and Swift, and examined sales of other carwashes. Moreover, the record reveals Noonan considered all three valuation methods; he did not look only at the cost of replacement. He testified he rejected the capitalization of income approach because of the effects of blighting and reconstruction in the neighborhood on Associated's business. He further explained he rejected the use of comparable sales because he did not find any recent sales of carwashes in the area to be comparable. This choice is reinforced by the fact all of Associated's witnesses testified at great length as to the superiority of Associated's winterized carwash facility. Moreover, the just compensation to which an owner of condemned land is entitled is determined by what the owner has lost; not what the condemnor has gained. *See In re Armoy Site*, 282 S.W.2d 464, 470 (Mo. 1955). We see no error in the trial court's denial of plaintiff's motion to strike Noonan's valuation testimony. *See State ex rel. State Highway Commission v. Dockery*, 300 S.W.2d 444, 451 (Mo.1957); *Land Clearance for Redevelopment Authority v. Holland*, 506 S.W.2d 469, 471 (Mo.App. 1974). *See also State ex rel. State Highway Commission v. Koberna*, 396 S.W.2d 654, 663 (Mo.1965); 5 Nichols, *Eminent Domain* § 20.1, at 20–27 to –30 (3d ed. 1985).

Del-Mar next attacks Noonan's method of depreciation. Del-Mar contends Noonan improperly included the replacement cost of equipment removed from the carwash by Associated before the taking and then deducted the salvage value of this equipment from his final figure. The proper method, according to Del-Mar, was to determine the replacement cost of only the remaining equipment and depreciate that figure.

During the condemnation process, Del-Mar suggested to Associated that they might wish to remove some of the equipment from the carwash for possible future use in other carwashes. Associated, pursuant to this suggestion, removed from the property certain items such as safe heads, coin boxes and light fixtures. Noonan testified the value of property removed by Associated would be $13,580 new. He subtracted 15% for depreciation and subtracted labor costs (installation cost) of $1200 for a total of $10,343. Noonan then subtracted $10,343 from the total equipment figure.

 The condemnor is entitled to credit for the value of fixtures removed as fixtures in the building, not their value after being removed. *State ex rel. State Highway Commission v. Hackett*, 370 S.W.2d 712, 716 (Mo.App.1963). The diminished value of the building is the proper measure. *Id.* Here, Associated's damages should have been reduced to the extent the removal of certain fixtures diminished the value of the property. Del-Mar is correct in that Associated should only receive damages for the fixtures on the property at the time of the taking. However, Noonan's method of finding a total figure for the fixtures and subtracting the figure for the removed fixtures produces a very similar result.

Noonan's error was not so prejudicial as to require his testimony to be struck, let alone justify reversal of the judgment. The value of the removed items is insignificant compared to the value of the property as a whole.

Del-Mar next contends the trial court improperly denied its motion to strike the testimony of another of Associated's expert witnesses, Fred Grauer. Del-Mar contends Grauer was not an expert in land valuation nor was his opinion based on local land values. Del-Mar also argues the survey upon which Grauer relied in arriving at a value for Associated's carwash lacked a proper foundation.

Grauer is a partner and chief executive officer in one of the three largest carwash equipment manufacturers nationwide. In addition to owning eight carwashes, he has also been involved in the development of 15,000 carwashes across the country. Grauer testified he investigates sites for possible carwashes as often as three times a week and specifically has been to St. Louis approximately twelve times in the last five to six years. In addition, he has visited Associated's property several of those times.

Over the years, Grauer developed a formula for assessing the desirability of a potential carwash site. This formula evolved from interviews with approximately 500 self-service carwash owners nationwide. The interviews were conducted under his direction from a questionnaire he prepared. Grauer later incorporated this formula into a self-serve newsletter which he used at trial to determine the site desirability of Associated's property. This newsletter is what Del-Mar refers to as a survey. With the aid of the newsletter formula, Grauer concluded the fair market value of Associated's carwash was $385,000.

Del-Mar withdrew its initial objection to admitting the newsletter-survey. Later, however, it objected several times throughout Grauer's testimony to the survey's improper foundation and Grauer's use of national average costs in determining the value of Associated's property. The trial court ultimately ruled Grauer was not qualified to render an opinion of the fair market value of Associated's site. At the end of the trial, Del-Mar moved to strike Grauer's testimony because of the survey's improper foundation and because it was based on national averages rendering it irrelevant for purposes of valuing Associated's property. The trial court denied plaintiff's motion. We find no error.

In a condemnation suit, all evidence of value which an ordinarily prudent person would take into account in reaching his conclusion respecting the fair market value of the condemned property is admissible. *Holland,* 506 S.W.2d at 470; *Greystone Heights Redevelopment Corp. v. Nicholas Investment Co.,* 500 S.W.2d 292, 299 (Mo.App.1973). Many elements properly enter into a determination of the market value of property. The landowner is therefore entitled to have the jury informed as to all facts relating to the property which would naturally impress a person of ordinary prudence in negotiating for its purchase. *Board of Public Buildings v. GMT Corp.,* 580 S.W.2d 519, 530 (Mo.App.1979). *See also* 4 Nichols, *Eminent Domain,* § 12.2[3] at 12-95 to -96 (3d ed. 1985).

Grauer's testimony falls into this category. Based on his experiences and background, Grauer was able to assess the desirability of Associated's site for a self-serve carwash. The desirability of the site, looking to such factors as visibility and traffic flow, necessarily affects the value of the property. These same factors would therefore naturally be brought to any buyer's attention in negotiating a sale. The same is true for Grauer's national averages. While not necessarily applicable to Associated's property directly, such figures do serve as a guidepost for analyzing the site and ultimately determining its value.

Grauer had inspected Associated's property several times. His information and knowledge of carwashes in general was superior to that of the ordinary person. His testimony could only aid the jury in its determination. *See State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.,* 381 S.W.2d 20, 24 (Mo.App. 1964). Moreover, evidence shedding light on the question of value should be admitted, subject only to the trial court's discretion. *See State ex rel. State Highway Commission v. Barron,* 400 S.W.2d 33, 37 (Mo.1966); *State ex rel. State Highway Commission v. Carlson,* 463 S.W.2d 74, 78 (Mo.App.1970). We find no abuse of discretion here.

Del-Mar, however, attacks both the foundation of the newsletter-survey and Grauer's national average figures. Del-Mar claims this evidence is based upon hearsay. An expert necessarily acquires his knowledge and expertise from many sources, some of which are inadmissible hearsay. *Barron, supra,* at 37; *Bloomfield Tractor Sales, supra,* at 24-25. Merely because an expert relies on information and opinions of others, as well as on market reports and the like, does not automatically disqualify his testimony. As long as such sources serve only as a background for his opinion and are not offered as independent substantive evidence of value, he should not be precluded from testifying. *Barron, supra,* at 38. *See also Carlson, supra,* at 77-79.

Obviously, the newsletter-survey here was based on hearsay information from various self-serve carwash owners. Not all of this information was acquired directly by Grauer. But, Grauer used this newsletter-survey merely as a basis for explaining his opinion of Associated's property; he did not use it as independent substantive evidence of value. Even the document itself states that it is to be used only as a guide. The survey may not have been scientifically designed, *cf. Liberty Financial Management Corp. v. Beneficial Data Processing Corp.,* 670 S.W.2d 40, 55 (Mo.App.1984), but it did have aspects of trustworthiness to justify its use by Grauer in formulating his opinion. *See Pittsburgh Press Club v. United States,* 579 F.2d 751, 757-758 (3d Cir.1978). The survey was not designed for use in litigation, but was designed to aid Grauer in his business. Those answering the questionnaire had no reason to lie; they could not profit from the answers. They were merely giving specific information based on their own experiences owning and operating self-serve carwashes. It was actually to their benefit to give the most truthful answers possible knowing that they would possibly have a written aid in assessing future sites. And, after compiling the data, Grauer attempted to verify the results with still other carwash owners. Under these circumstances, we conclude Grauer could testify using the

newsletter-survey to explain the basis of his opinion since the information used to formulate the survey itself was not offered in evidence. *See Carlson, supra,* at 77–79.

Del-Mar next argues the trial court improperly permitted Associated's counsel to question Del-Mar's president regarding 1) Del-Mar's conduct prior to the taking, 2) Del-Mar's financial resources and 3) alleged adverse effects of a blighting ordinance used to acquire Associated's property. Del-Mar contends the questions were irrelevant to the issue of fair market value of Associated's property and, thus, were prejudicial. We disagree.

Del-Mar does correctly point out the sole issue in a condemnation trial is the fair market value of the property on the date of the taking. *See St. Louis Housing Authority v. Barnes,* 375 S.W.2d 144, 147 (Mo.1964). Del-Mar chose both the comparable sales and capitalization of income methods to value Associated's property. The capitalization of income method employs the actual income figures from the carwash to arrive at a value for Associated's property. *See* 4 Nichols, *supra,* at § 12.312[3] p. 12–191. Aware of plaintiff's choice of methods, Associated elicited evidence throughout the trial of redevelopment and construction in the area to explain the carwash's loss of income over the past several years. Evidence of Del-Mar's pre-taking conduct and the condition of the surrounding neighborhood was not brought out to prejudice Del-Mar, but only to show why the income approach was not suitable for valuing Associated's property. *See generally, Land Clearance for Redevelopment Authority v. Morrison,* 457 S.W.2d 185, 192 (Mo. banc 1970). *See also State ex rel. State Highway Commission v. Anderson,* 485 S.W.2d 614, 615 (Mo.App. 1972).

What Del-Mar really appears to be complaining about are certain "accusations" directed at Del-Mar's president. As an example, Del-Mar points out questions such as: "Did you in fact follow the procedures with regard to these projects of having someone try to say that the projects [buildings] were unfit and simply have them condemned without the payment of compensation?" These types of questions have the potential to prejudice the condemnor in the eyes of the jury. But, Del-Mar timely objected to such accusations and the trial court sustained them. Del-Mar received the relief it sought and cannot now be heard to complain on appeal. *See Arno v. St. Louis Public Service Co.,* 202 S.W.2d 787, 788 (Mo.1947). Moreover, Del-Mar could not have been prejudiced by these questions. An officer of Associated had already testified to loss of income due to the "stigma of the condemnation in the area" without objection from Associated.

Del-Mar also argues in this point the trial court improperly allowed Associated to delve into Del-Mar's source of funds. Generally, evidence as to the financial status of the parties is improper. *See M & A Electric Power Cooperative v. True,* 480 S.W.2d 310, 314 (Mo.App.1972). But, at the same time, if one side opens up the matter of finances it no longer has the right to complain about further testimony or questioning along this line. *See Reorganized School District No. 2 v. Missouri Pacific Railroad,* 503 S.W.2d 153, 161 (Mo. App.1973). Del-Mar did just that.

Del-Mar elicited evidence showing it was a non-profit community corporation whose purpose was to represent the residents of the community and to foster economic development of "disinvested communities", and how the city approved the redevelopment plan for the neighborhood project in which Associated's property was situated. On cross-examination, Associated elicited evidence that private investors owned a portion of Del-Mar's stock, Del-Mar was allowed to make an 8% profit, Del-Mar received government funding, and National Food Stores was to lease the property from Del-Mar. Associated was only countering the impression and thrust of Del-Mar's evidence that the residents in the Del-Mar project area would be paying Associated's damages. Associated's line of questioning in response to Del-Mar's direct testimony was not prejudicial in this instance, and we find no abuse of the trial court's discretion. *See Reorganized School District,* 503

S.W.2d at 161. Moreover, Del-Mar made it quite clear on redirect that Del-Mar would be paying any damage award set by the jury as opposed to National Food Stores.

None of Del-Mar's points are persuasive. And, points lacking individual merit acquire no additional substance when viewed together. *State ex rel. State Highway Commission v. Moore*, 565 S.W.2d 810, 817 (Mo.App.1978). The jury's assessment of damages is within the range of competent evidence. *See State ex rel. State Highway Commission v. Eilers*, 406 S.W.2d 567, 574 (Mo.1966); *Land Clearance for Redevelopment Authority v. Holland*, 506 S.W.2d 469, 472 (Mo.App.1974).

Judgment affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.